[No. C046695. Third Dist. Dec. 20, 2004.]

PAUL SULIER, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Respondent;
DEPARTMENT OF CORRECTIONS, Real Party in Interest and
Respondent.

**COUNSEL**

Mark R. Kruger for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Stephen A. Jennings, for Real Party in Interest and Respondent.

**OPINION**

**ROBIE, J.—** ██ Does Government Code section 3304, subdivision (d) (contained in the Public Safety Officers Procedural Bill of Rights Act[1]) require the California Department of Corrections (CDC) to mail a formal notice of adverse action within one year of the discovery of a correctional officer's misconduct by someone authorized to investigate that misconduct? No. That statute states the CDC must "notify the public safety officer of its proposed disciplinary action within" that one-year deadline. Because the CDC complied with this statute here, we shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts of this case are undisputed. The CDC imposed discipline on Paul Sulier by demoting him from correctional sergeant to correctional officer based on allegations he provided confidential information about one inmate to another.

The initial investigation into Sulier's conduct started on July 10, 2000. On July 2, 2001, the CDC sent Sulier a letter notifying him of the completion of the investigation and the discipline it proposed to impose on him: "You are hereby notified that the investigation into your behavior has been completed. The investigation sustained the allegations that on July 7, 2000, you provided Inmate [A] with confidential information regarding Inmate [B.] [¶] Therefore, a decision has been made to take disciplinary action against you. The recommended penalty is a one-step demotion to a Correctional Officer. [¶]

---

[1] Hereafter POBRA. (Gov. Code, § 3300 et seq.) All further undesignated statutory references are to the Government Code unless otherwise indicated.

You may anticipate formal adverse action papers to be served upon you within the next thirty (30) days." The CDC personally served a formal notice of adverse action pursuant to section 19574 on August 2, 2001.

Sulier appealed his demotion to the State Personnel Board (SPB). During the hearing before the administrative law judge (ALJ), Sulier moved to dismiss the disciplinary action because he had not been served with the formal notice of adverse action[2] within the one-year limitation period set forth in section 3304, subdivision (d) (hereafter section 3304(d)). The ALJ denied the motion and sustained the imposition of discipline.

The SPB rejected the ALJ's decision and decided the matter itself. The SPB concluded the discipline was improper because the CDC failed to serve a formal notice of adverse action within one year of the start of the investigation. The SPB revoked the demotion and awarded Sulier backpay, interest, and benefits that he would have earned as a correctional sergeant.

Sulier filed a petition for a writ of mandamus in the trial court seeking reinstatement to his position as correctional sergeant based on the SPB's decision. The CDC filed its own cross-complaint/petition for writ of administrative mandamus, arguing that the SPB improperly revoked the discipline against Sulier.

The trial court concluded that the informal notice of proposed discipline satisfied the requirements of section 3304(d) and remanded the matter to the SPB for further proceedings.

On April 20, 2004, Sulier filed his timely notice of appeal from the trial court's February 24, 2004, appealable judgment.

DISCUSSION

I

*Standard of Review*

"[A] trial court's findings and judgment on a petition for writ of mandate are upheld if supported by substantial evidence. [Citation.] However, the trial court's construction of a statute is purely a question of law and is subject to de novo review on appeal." (*California Teachers Assn. v. Governing Bd. of Golden Valley Unified School Dist.* (2002) 98 Cal.App.4th

---

[2] Section 19574 specifies the contents of a formal notice of adverse action.

369, 375 [119 Cal.Rptr.2d 642] (*Golden Valley*).) Here, we are concerned solely with the trial court's interpretation of section 3304(d); thus, our review is de novo.

II

*The Trial Court Properly Concluded the CDC Satisfied*
*Section 3304(d)*

Sulier argues "in order for the state to comply with the requirements of section 3304(d)[,] it must . . . adhere to the notice requirements contained in section 19574." We disagree.

■ In examining statutes, " '[c]ourts must ascertain legislative intent so as to effectuate a law's purpose. [Citations.] "In the construction of a statute . . . the office of the judge is simply to ascertain and declare what is . . . contained therein, not to insert what has been omitted, or to omit what has been inserted; . . ." [Citation.] Legislative intent will be determined so far as possible from the language of statutes, read as a whole, and if the words are reasonably free from ambiguity and uncertainty, the courts will look no further to ascertain its meaning. [Citation.] " 'The court should take into account matters such as *context*, the object in view, the evils to be remedied, the history of the times and of *legislation upon the same subject*, public policy, and contemporaneous construction.' " [Citations.] "Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." [Citations.]' " (*Golden Valley, supra,* 98 Cal.App.4th at pp. 375–376.)

■ The POBRA was first enacted in 1976. (Stats. 1976, ch. 465, § 1, p. 1202.) It is "primarily a labor relations statute. It provides a catalog of basic rights and protections that must be afforded all peace officers by the public entities which employ them." (*California Correctional Peace Officers Assn. v. State of California* (2000) 82 Cal.App.4th 294, 304 [98 Cal.Rptr.2d 302].) "One such protection is to have a speedy adjudication of conduct that could result in discipline." (*Alameida v. State Personnel Bd.* (2004) 120 Cal.App.4th 46, 63 [15 Cal.Rptr.3d 383].) This speedy adjudication protection is contained in section 3304. (*Alameida,* at pp. 60–63.)

We therefore turn to the language of that section. Section 3304(d) states, in relevant part: "Except as provided in this subdivision and subdivision (g), no punitive action, nor denial of promotion on grounds other than merit, shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public

agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct. . . . In the event that the public agency determines that discipline may be taken, it shall complete its investigation and notify the public safety officer of its *proposed disciplinary action* within that year." (Italics added.)[3]

In addition to section 3304(d), section 3304, subdivision (f) provides "If, after investigation and any predisciplinary response or procedure, the public agency decides to impose discipline, the public agency shall notify the public safety officer in writing of its decision to impose discipline, including the date that the discipline will be imposed, within 30 days of its decision, except if the public safety officer is unavailable for discipline."

Thus, under the plain language of section 3304(d), if the CDC desires to discipline an officer, then it must complete the investigation into the misconduct within one year of the discovery of the misconduct by a person authorized to start an investigation into the conduct. If, at the conclusion of that investigation, the CDC "determines that discipline *may* be taken," then it must give the officer notice of the "proposed disciplinary action" during that same one-year time frame. (*Ibid.*, italics added.) When the CDC actually "*decides* to impose discipline," then it must notify the public safety officer in writing of its decision to impose discipline (§ 3304, subd. (f), italics added.).

Here, the CDC complied with this statute. Within one year of initiating the investigation, it served a notice on Sulier informing him that the investigation was completed. Further, that same letter identified the "proposed discipline" of "a one-step demotion to a Correctional Officer." Within 30 days of that notice, the CDC provided Sulier with a formal notice of adverse action under section 19574 notifying him of its decision to impose discipline on him.

Sulier argues the legislative history of section 3304(d) and sections 19574 and 19635 compel the conclusion that the CDC must serve a *formal notice* of adverse action under section 19574 within one year. We disagree.

We decline to look behind the unambiguous and certain words of section 3304(d) to its legislative history. When the words of a statute "are reasonably free from ambiguity and uncertainty, the courts will look no further to ascertain its meaning." (*Golden Valley, supra,* 98 Cal.App.4th at p. 375.) The CDC satisfied the requirements of those words.

We turn to the language of sections 19635 and 19574, but as we shall demonstrate, we find nothing in these statutes or section 3304(d) which suggests that section 3304(d) requires this formal notice.

---

[3] The statute provides a number of exceptions to this requirement that are not applicable here. (§ 3304(d).)

Section 19635 provides: "No adverse action shall be valid against any state employee for any cause for discipline based on any civil service law of this state, unless notice of the adverse action is served within three years after the cause for discipline, upon which the notice is based, first arose. Adverse action based on fraud, embezzlement, or the falsification of records shall be valid, if notice of the adverse action is served within three years after the discovery of the fraud, embezzlement, or falsification."

■ The requirements of a formal notice of adverse action are provided for in section 19574: "The appointing power, or its authorized representative, may take adverse action against an employee for one or more of the causes for discipline specified in this article. Adverse action is valid only if a written notice is served on the employee prior to the effective date of the action, as defined by board rule. The notice shall be served upon the employee either personally or by mail and shall include: (1) a statement of the nature of the adverse action; (2) the effective date of the action; (3) a statement of the reasons therefor in ordinary language; (4) a statement advising the employee of the right to answer the notice orally or in writing; and (5) a statement advising the employee of the time within which an appeal must be filed. The notice shall be filed with the board not later than 15 calendar days after the effective date of the adverse action."

■ The language of section 3304(d) does not suggest any invocation of this formal civil service process. Unlike sections 19754 and 19635, section 3304(d) contains no reference to the service of a "notice of adverse action." It contains no reference to section 19574. Further, it does not reference any of the items specified in section 19574 except the nature of the proposed discipline. As we have already stated, all section 3304(d) requires is that the agency "notify the public safety officer of its proposed disciplinary action within that year." We conclude this does not invoke the requirements of section 19574.

The context of section 3304(d), both in terms of who it applies to and where it is located in the Government Code, vitiates Sulier's argument. First, section 3304(d) applies to both state and local agency employees, not solely state civil service employees. (See, e.g., *Stanton v. City of West Sacramento* (1991) 226 Cal.App.3d 1438, 1443 [277 Cal.Rptr. 478] ["the procedural details of an administrative appeal required by section 3304, subdivision (b) are to be formulated by the local agency"].) Thus, it makes sense that section 3304(d) does not necessarily incorporate section 19574. Second, section 3304(d) is contained in a completely separate part of the Government Code

from the state civil service portion of the Government Code.[4] Thus, there is no logical reason to infer that section 3304(d) incorporates the notice of adverse action requirements of section 19574.

■ The language of section 3304(d) also shows that it contemplates the giving of a preliminary informal notice, not a formal notice of adverse action. Section 3304(d) requires the public employer to notify the officer of the "proposed disciplinary action." To "propose" something means "to form or put forward a plan or intention." (Merriam-Webster's Collegiate Dict. (10th ed. 2000) p. 933.) Just because the discipline is proposed does not mean it will be carried out.

Further, the notice contemplated by section 3304(d) is given at a time when the disciplinary authority has not necessarily committed itself to disciplining the employee or even determined when the discipline will be imposed. For these reasons, imposing a formal notice of adverse action requirement makes no sense. The public agency could not specify the required effective date of the action or the time a public safety officer has to file an appeal from discipline the agency has not yet decided to impose. In this light, it makes sense that a formal notice of adverse action is required only when the agency *decides* to impose discipline and must serve a formal notice under section 3304, subdivision (f).

Our reading of the statute harmonizes each of its provisions and fits the scheme of an original informal notice and a final formal notice envisioned by sections 3304(d) and 3304, subdivision (f). If section 3304(d) required a formal notice of adverse action, it would render the subsequent notice required by section 3304, subdivision (f) meaningless. There would be no reason for the CDC to provide a subsequent notice it had decided to impose discipline if the original notice under section 3304(d) contained that same information.

We conclude this analysis by noting that the Legislature was cognizant that informal notices of discipline are used by agencies, as shown by section 3304, subdivision (h). That section provides, "For those members listed in subdivision (a) of Section 830.2 of the Penal Code, the 30-day time period provided for in subdivision (e) shall not commence with the service of a preliminary notice of adverse action, should the public agency elect to provide the public safety officer with such a notice." Given that the Legislature knew that there was such a thing as a preliminary notice of adverse action, its failure to specify the formal notice of adverse action in section 3304(d) demonstrates that section does not require such a formal notice. If the Legislature had intended in section 3304(d) to require the

---

[4] Section 18500 et seq.

agency to serve a formal notice of adverse action under section 19574, it could have used the language of section 19635 or it could have expressly referenced section 19574. It did neither of these things. We will not impose the formal notice of adverse action requirement where none appears from the language of the statute.

Sulier further argues this construction of the statute could lead to the absurd result of a state employer giving a public safety officer notice of proposed discipline and then waiting an additional two years to actually impose discipline. He argues local public employers not subject to section 19635 could wait indefinitely before imposing discipline. The short answer to this argument is that this did not happen here. In its notice of proposed action, the CDC stated it would follow up that notice with a formal notice of adverse action within 30 days. The CDC did exactly that. The resolution of Sulier's "imaginary horrible" (of intentional bad faith dilatory conduct) must wait for a case where the facts present that situation.

Sulier argues *Alameida v. State Personnel Bd., supra,* 120 Cal.App.4th 46 compels the conclusion that his discipline must be revoked. We disagree. There, the CDC served a notice of adverse action on an employee based on allegations of: (1) sexual assault that occurred in September 1998; and (2) falsely denying them in a July 2000 interview with CDC. (*Id.* at p. 51.) The CDC served a notice of adverse action more than a year after the discovery of the original sexual assault allegations, but within a year of the dishonesty allegation. (*Ibid.*) We held that the alleged dishonesty of denying an underlying charge during the investigation did not start a new one-year limitations period to give notice of the proposed discipline. (*Id.* at p. 62.) We stated, "the dishonesty charge flows directly from the investigation of the assault. To allow the dishonesty charge to survive would defeat the purpose of the limitations period, which is to insure that conduct that could result in discipline should be adjudicated when memories are fresh." (*Ibid.*)

 *Alameida,* however, has no application here. "Cases do not stand for propositions that were never considered by the court." (*Mares v. Baughman* (2001) 92 Cal.App.4th 672, 679 [112 Cal.Rptr.2d 264].) In *Alameida,* we were not concerned with, nor did we discuss, the adequacy of the notice that was served under section 3304(d). (*Alameida v. State Personnel Bd., supra,* 120 Cal.App.4th at pp. 53, 60–61.) Rather, we focused on whether the notice that was served (which happened to be a notice of adverse action) was timely in light of the subsequent malfeasance during the investigation. (*Id.* at pp. 60–61.) That analysis has no application here.

III

*The CDC Did Not Violate Sulier's* Skelly *Rights*

Finally, we reject Sulier's argument that the informal notice provided within a year violated his rights under *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774]. Under *Skelly,* before discipline becomes effective, a public employee must be given "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Id.* at p. 215.)

"' "[D]ue process is a flexible concept. . . . Thus, not every situation requires a formal hearing accompanied by the full rights of confrontation and cross-examination." ' [Citation.]" (*James v. City of Coronado* (2003) 106 Cal.App.4th 905, 912 [131 Cal.Rptr.2d 85].) What process is due must be tailored to the particular situation. (*Ibid.*)

The administrative appeal process contemplated by section 3304 protects a police officer employee's due process rights. (*Stanton v. City of West Sacramento, supra,* 226 Cal.App.3d at p. 1442.) In *Stanton,* the appellate court concluded a written reprimand did not trigger the due process safeguards outlined in *Skelly.* (*Stanton,* at p. 1442.) Importantly, the court concluded that the officer's due process rights were protected by section 3304's administrative appeal process that followed the issuance of that written reprimand. (*Stanton,* at p. 1442.)

Similarly, in *Crupi v. City of Los Angeles* (1990) 219 Cal.App.3d 1111 [268 Cal.Rptr. 875], the police chief adopted a report of the police commission that stated the officer's shooting was " 'out of policy' " and recommended that the officer be subject to administrative disapproval. (*Id.* at p. 1120.) In rejecting the officer's claim that his administrative appeal rights were violated by this action, the appellate court concluded, "By so recommending, the chief of police initiated a process through which the matter would be adjudicated . . . . Thus, [the officer] *is* being afforded a right to an administrative appeal as required by section 3304." (*Ibid.*)

Here, the CDC's notification to Sulier of the proposed discipline was simply that: A *proposal* of discipline that the agency might impose. Like the *Stanton* written reprimand and the *Crupi* adoption of the commission report, this preliminary notification did not trigger the full panoply of Sulier's *Skelly* rights. It was the first step whereby the CDC initiated the process through which the matter would be adjudicated.

Moreover, the CDC afforded Sulier those *Skelly* rights upon the service of the formal notice of adverse action. At that point, the CDC gave him notice of the charges, access to the materials upon which the charges were based, and a right to respond orally or in writing to the authority initially imposing discipline.

## DISPOSITION

The judgment is affirmed. The CDC shall recover its costs on appeal. (Cal. Rules of Court, rule 27(a).)

Davis, J., concurred.

**SIMS, Acting P. J.**—I concur in the result but reach it by a different route, by reference to the legislative history of an ambiguous statute.

Appellant Paul Sulier, a correctional officer for the California Department of Corrections (CDC), contends Government Code section 3304,[1] contained in the Public Safety Officers Procedural Bill of Rights Act (§ 3300 et seq.), required CDC to mail a formal notice of adverse action (as defined in section 19574[2] of state civil service laws) within one year of the discovery of the grounds for discipline. Here, CDC gave notice of proposed action within the one-year period, and formal notice of adverse action shortly after expiration of the one-year period. Section 19635 requires a notice of adverse action under the state civil service laws to be served within three years after the cause for discipline arose.

Section 3304, subdivision (d), provides in part: "Except as provided in this subdivision and subdivision (g), no punitive action,[3] nor denial of promotion on grounds other than merit, shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not

---

[1] Undesignated statutory references are to the Government Code.

[2] Section 19574 provides: "The appointing power, or its authorized representative, may take adverse action against an employee for one or more of the causes for discipline specified in this article. Adverse action is valid only if a written notice is served on the employee prior to the effective date of the action, as defined by board rule. The notice shall be served upon the employee either personally or by mail and shall include: (1) a statement of the nature of the adverse action; (2) the effective date of the action; (3) a statement of the reasons therefor in ordinary language; (4) a statement advising the employee of the right to answer the notice orally or in writing; and (5) a statement advising the employee of the time within which an appeal must be filed. The notice shall be filed with the board not later than 15 calendar days after the effective date of the adverse action."

[3] "Punitive action" means "any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." (§ 3303.)

completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct . . . . *In the event that the public agency determines that discipline may be taken, it shall complete its investigation and notify the public safety officer of its proposed disciplinary action within that year* . . . ." (Italics added.)

Section 3304, subdivision (f), provides: "If, after investigation and any predisciplinary response or procedure, the public agency decides to impose discipline, the public agency shall notify the public safety officer in writing of its decision to impose discipline, including the date that the discipline will be imposed, within 30 days of its decision, except if the public safety officer is unavailable for discipline."

The majority decline to consider the legislative history of these statutes on the ground they are unambiguous. I respectfully disagree. In my view, section 3304, subdivision (d), is ambiguous as to notice of "proposed disciplinary action." However, as it turns out, the legislative history confirms that the majority's construction of these statutes is correct.

"Where, as here, the issue presented is one of statutory construction, our fundamental task is 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' [Citations.] We begin by examining the statutory language because it generally is the most reliable indicator of legislative intent. [Citation.] We give the language its usual and ordinary meaning, and '[i]f there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.' [Citation.] If, however, the statutory language is ambiguous, 'we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.' [Citation.] Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute. [Citation.]" (*Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 227 [120 Cal.Rptr.2d 795, 47 P.3d 639].)

The statutory language at issue in this case was added to section 3304 in 1997. (Stats. 1997, ch. 148, § 1.) The Legislative Counsel's Digest stated in part:

"(1) The Public Safety Officers Procedural Bill of Rights Act provides that no punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency without providing the public safety officer with an opportunity for administrative appeal.

"This bill would prohibit any punitive action, or denial of promotion on grounds other than merit, from being undertaken for any act, omission, or

other allegation of misconduct occurring on or after January 1, 1998, if the investigation of the allegation is not completed within one year of the public agency's discovery of the allegation of an act, omission, or other misconduct, except in specified circumstances. It would also provide that if, after investigation and any predisciplinary response or procedure, the public agency decides to impose discipline on a public safety officer, the public agency shall notify the public safety officer in writing of its intent to impose discipline, including the date the intended discipline will be imposed, within 30 days of its decision." (Legis. Counsel's Dig., Assem. Bill No. 1436 (1996–1997 Reg. Sess.).)

The legislative history of section 3304, former subdivision (c) (now subdivision (d)), repeatedly identified the purpose reflected in the following analysis: "The purpose of this bill is to enact specific time limits and exceptions for investigating alleged acts or omissions which may lead to punitive actions, as specified." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1436 (1996–1997 Reg. Sess.) as amended June 17, 1997, p. 3 (hereafter Sen. Rules Com., Analysis of Assem. Bill No. 1436).) The analysis noted existing law, section 19635, required disciplinary action to be initiated within three years after the cause for discipline arose. (Sen. Rules. Com., Analysis of Assem. Bill No. 1436, *supra*.) The analysis said the proposed legislation prohibited agencies from taking punitive action (defined as any action which may lead to dismissal, demotion, etc.), if the investigation was not completed within one year, and "[t]he agency must complete its investigation and notify the officer of the proposed disciplinary action within that year." (*Id.*, p. 2.)

The legislative purpose of completing investigations and notifying officers of proposed discipline appears in the express language of section 3304.

The legislative history suggested an additional purpose which did not make its way into the statute. The Senate Rules Committee analysis quoted the author's arguments in support of the legislation, i.e., that " '[a]ll representative law enforcement groups have carefully negotiated this bill and agree on the need and reasonableness of this bill; in essence, it is unfair to our peace officer[s] not to investigate *and bring charges or dismiss the action* within a reasonable time. One year is the agreed-upon time by both labor and management.' " (Sen. Rules Com., Analysis of Assem. Bill No. 1436, *supra*, p. 5.) This quote also appeared in other legislative committee analyses. (E.g., Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1436 (1996–1997 Reg. Sess.), Apr. 15, 1997, p. 2.)

Although an author's opinion contained in legislative committee analyses may constitute cognizable legislative history (*Metropolitan Water Dist. v. Imperial Irrigation Dist.* (2000) 80 Cal.App.4th 1403, 1425–1426 [96 Cal.Rptr.2d 314]), the author's incidental reference to "bring[ing] charges"

was itself ambiguous and an insufficient basis upon which to import section 19574 requirements into section 3304.

The Senate Rules Committee analysis also noted that the State Personnel Board (SPB) opposed the bill on the ground that it would "abandon the present three-year statute of limitations on the service of adverse action in favor of a one-year rule for peace officers. This will make it more difficult for state agencies to discipline these officers . . . because the agency could not complete its investigation in a timely manner." (Sen. Rules Com., Analysis of Assem. Bill No. 1436, *supra*, p. 5.) Although it was contained in the Senate Rules Committee analysis of Assembly Bill No. 1436, SPB's opinion is not entitled to consideration, because it was merely an argument expressing an opinion that was not borne out by the language of the statute or by any other piece of cognizable legislative history.

Sulier argues the legislative history shows an intent to reduce the limitations period for notifying state peace officers of adverse action, from three years (§ 19635) to one year (§ 3304), and to make the section 19574 notice requirements applicable to section 3304. Nothing in the legislative history supports Sulier's extreme position.

I conclude the totality of the legislative history supports a conclusion that section 3304 did not require CDC to mail a formal notice of adverse action (pursuant to section 19574) within one year of the discovery of Sulier's misconduct.

Appellant's petition for review by the Supreme Court was denied March 16, 2005. Brown, J., did not participate therein.