[No. H031816. Sixth Dist. Jan. 23, 2009.]

JAMES BENEFIELD et al., Plaintiffs and Respondents, v.
DEPARTMENT OF CORRECTIONS AND REHABILITATION, Defendant
and Appellant.

**COUNSEL**

Stephen Allen Jennings for Defendant and Appellant.

Bennett & Sharpe Inc., and Barry Jay Bennett for Plaintiffs and Respondents.

**OPINION**

**MIHARA, J.**—Appellant, Department of Corrections and Rehabilitation (CDCR), appeals from the trial court's judgment ordering it to dismiss adverse actions against respondents Ronald Sphar and Robert Martin,

and to reinstate them to their employment. CDCR asserts that the trial court erroneously concluded that CDCR violated the Public Safety Officers Procedural Bill of Rights Act (POBRA; Gov. Code, § 3300 et seq.)[1] because the notices of adverse action served on Martin and Sphar bore the signature of someone other than the person who had decided on the level of discipline. We conclude that the trial court's judgment is not supported by substantial evidence, and we reverse.

## I. Factual and Procedural Background

In February 2004, Correctional Officer Marta Jaramillo reported to CDCR that a group of correctional officers, including Sphar and Martin, had been involved in an incident of misconduct on November 3, 2003. In February 2004, CDCR commenced an investigation of this incident. Sphar and Martin were interviewed and denied committing any misconduct. The investigation was completed, and a meeting was held on November 3, 2004, to consider the results of the investigation.

Cheryl Pliler, CDCR's deputy director of prison field operations, who held the highest rank in CDCR's prison operations, attended this meeting along with her superior, John Dovey, CDCR's chief deputy director.[2] At the meeting, Pliler was designated as the sole "hiring authority" who would be responsible for signing any notices of adverse action in this matter.[3] A consensus was reached at the meeting as to the appropriate penalties for each of the employees involved in the incident. Five were to be terminated, one was to be demoted, and three were to receive salary reductions. Sphar and Martin were to receive salary reductions.

On November 4, 2004, Pliler signed notices of adverse action for Sphar and Martin that notified them of the intended discipline of a 10 percent salary

---

[1] "POBRA is the acronym for the Public Safety Officers Procedural Bill of Rights Act. . . . It provides certain protections for law enforcement officers who are the subjects of administrative investigations." (*Van Winkle v. County of Ventura* (2007) 158 Cal.App.4th 492, 494 [69 Cal.Rptr.3d 809], citation & fn. omitted.)

[2] Pliler's only other superior in CDCR was Jeanne Woodford, CDCR's director. Pliler ranked above all prison wardens and the regional administrators who supervised the wardens.

[3] CDCR's policies provide that "[t]he Hiring Authority is an individual authorized by the Director to hire, discipline, and dismiss staff." "If an employee misconduct investigation/inquiry results in a finding that any allegation of employee misconduct is sustainable, the Hiring Authority shall decide whether or not to initiate an adverse personnel action. When a decision is made to initiate an adverse personnel action, the provisions of DOM 33030 shall be followed." The hiring authority is responsible for ensuring that an employee "receives a written disposition of the investigation at the conclusion of the investigation." The hiring authority is also required to "[r]eview and sign the Preliminary Notice of Adverse Personnel Action and the formal Notice of Adverse Personnel Action."

reduction for one year. On November 4, both Pliler and Dovey signed "route slips" containing the recommendations that Martin and Sphar each receive a 10 percent salary reduction for a year. However, Dovey subsequently approved alterations to the notices that Pliler had signed, which changed the adverse action to dismissal for both Sphar and Martin. Dovey did not sign the altered notices; the alterations were made to the notices after Pliler signed them on November 3, and without consulting her.

While Dovey had the authority to change the penalty level, he did not have the authority to do so after Pliler had signed the notices and without discussing the matter with her.[4] However, Dovey could have simply signed new notices himself. Pliler later learned that the notices bearing her signature had been changed. Dovey told her that he had changed them after being urged to do so by another CDCR employee.

Sphar and Martin received notices signed by Pliler that informed them that they were dismissed as of November 19, 2004.[5] Martin's *Skelly*[6] hearing was held on November 15, 2004, and he was thereafter notified that the effective date of his dismissal was being extended "until further notice."

On November 30, 2004, amended notices of adverse action of dismissal were served on Martin and Sphar. Although the printed name below the signature on each of these amended notices was "Cheryl K. Pliler [¶] Deputy Director, Institutions," the notices were actually reviewed and signed by Pliler's subordinate, Suzan Hubbard, a CDCR assistant deputy director who "routinely reviewed and signed documents on [Pliler's] behalf when she was unavailable." These notices stated that the dismissals were effective on December 8, 2004. "[I]t was not unusual for [Hubbard] to sign off on routine matters, even when [Pliler] did not know about those matters." Pliler was unaware that Hubbard had signed these amended notices.

Sphar's *Skelly* hearing was held on December 6, 2004. Pliler remained the hiring authority in this matter until December 30, 2004, when she retired, and Hubbard took over her position. Sphar and Martin appealed their dismissals to the State Personnel Board (SPB).

---

[4] Sphar and Martin conceded below that Dovey "had the authority" to substitute himself as the hiring authority.

[5] The record before us is unclear as to precisely when these notices were received by Martin and Sphar. Sphar submitted evidence that he received the notice signed by Pliler after November 23, 2004. There is no evidence in the record as to when Martin received the notice signed by Pliler.

[6] A *Skelly* hearing is an opportunity for the employee to respond to the charges in the notice of adverse action. (*Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 206 [124 Cal.Rptr. 14, 539 P.2d 774]; *Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 131, fn. 2 [68 Cal.Rptr.3d 568].)

In September 2006, while their appeals to the SPB were pending, Sphar, Martin and others filed a petition for extraordinary relief under Government Code section 3309.5 in the superior court. They claimed that CDCR had failed to timely serve them with valid notices of adverse action. They sought an order dismissing the adverse actions against them, and sought their costs and attorney's fees.

CDCR opposed the petition and asserted that Sphar and Martin had been timely served with notices and accorded all appropriate procedural rights. CDCR claimed that due process did not require that the notice of adverse action be signed by the same person who had determined the penalty. CDCR relied on Government Code section 19574. It also argued that more than one person could have served as hiring authority in the matter and that Dovey had the authority to alter the penalty. Finally, CDCR asked the superior court to "grant it leave to amend the Adverse Actions to cure a simple defect."

The appeals by Sphar and Martin to the SPB were still pending at the time of the trial court's April 2007 decision. The court concluded that, although Dovey "may have had the authority to change the penalty decision, keeping Pliler's signature on the document was seriously misleading because it conveyed the understanding that she, the hiring authority, had approved it." The court concluded that Sphar and Martin had a procedural due process right "to be judged by a designated and identifiable person or persons." Because the notices misidentified the person who had made the dismissal decision, they had been deprived of this right. The court stated: "It follows then, that the rights of Martin and Sphar were violated when they were not served with a valid notice of adverse action within the one year time limit mandated by Government Code Section 3304(d)." The court ordered that the adverse actions against Martin and Sphar be dismissed, and that they be reinstated to their positions "with all salary, seniority and other benefits restored to them as required by law, and [their] personnel records to be corrected to delete reference to their termination." CDCR filed a timely notice of appeal in June 2007.

## II. Discussion

The extraordinary writ petition filed by Sphar and Martin in the trial court sought relief that was authorized only for a violation of POBRA. POBRA is contained in chapter 9.7 of division 4 of title 1 of the Government Code. (Gov. Code, § 3300.) "It shall be unlawful for any public safety department to deny or refuse to any public safety officer the rights and protections guaranteed to him or her by this chapter." (Gov. Code, § 3309.5, subd. (a).) "The superior court shall have initial jurisdiction over any proceeding brought by any public safety officer against any public safety department for alleged violations of

this chapter." (Gov. Code, § 3309.5, subd. (c).) "In any case where the superior court finds that a public safety department has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary injunction, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer." (Gov. Code, § 3309.5, subd. (d)(1).)

"Except as provided in this subdivision and subdivision (g), no punitive action, nor denial of promotion on grounds other than merit, shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct. This one-year limitation period shall apply only if the act, omission, or other misconduct occurred on or after January 1, 1998. In the event that the public agency determines that discipline may be taken, it shall complete its investigation and notify the public safety officer of its proposed disciplinary action within that year, except in [certain specified] circumstances."[7] (Gov. Code, § 3304, subd. (d).)

█ Although their petition sought relief solely under POBRA, Sphar and Martin cited Government Code section 19574 in their petition and have relied upon that statute throughout these proceedings. Government Code section 19574, which is not part of POBRA, mandates that a formal notice of "adverse action" be given to an employee prior to the effective date of the disciplinary action so that the employee may contest the disciplinary action. "The appointing power, or its authorized representative, may take adverse action against an employee for one or more of the causes for discipline specified in this article. Adverse action is valid only if a written notice is served on the employee prior to the effective date of the action, as defined by board rule. The notice shall be served upon the employee either personally or by mail and shall include: (1) a statement of the nature of the adverse action; (2) the effective date of the action; (3) a statement of the reasons therefor in ordinary language; (4) a statement advising the employee of the right to

---

[7] The exceptions to the one-year limitation include: "If the act, omission, or other allegation of misconduct is also the subject of a criminal investigation or criminal prosecution, the time during which the criminal investigation or criminal prosecution is pending shall toll the one-year time period." (Gov. Code, § 3304, subd. (d)(1).) The record contains indications that the investigation of the November 3, 2003 incident was commenced as a criminal investigation. The reports of the initial interviews identify those interviews as "Investigatory Interview Criminal." However, the parties deny that the investigation was commenced as a criminal investigation, so we ignore these indications.

answer the notice orally or in writing; and (5) a statement advising the employee of the time within which an appeal must be filed." (Gov. Code, § 19574, subd. (a).)

CDCR's appeal challenges the sufficiency of the evidence to support the trial court's findings and judgment. CDCR's initial contention in its opening brief is that the record does not contain substantial evidence to support a finding that the *amended* notices were "misleading." This argument is misdirected. The trial court found that the *original* notices were misleading. The original notices dismissed Sphar and Martin as of November 19, 2004. Martin's *Skelly* hearing occurred on November 15, before the effective date of the dismissal and before the amended notices were served. Although, after the *Skelly* hearing, the date of Martin's dismissal was extended before its effective date, the trial court could have reasonably concluded that service of the amended notice *after* Martin's *Skelly* hearing could not remedy any POBRA violation arising from a defect in the original notice.

The record before us does not explicitly reflect that the effective date of Sphar's dismissal was extended prior to its occurrence.[8] Thus, Sphar's dismissal may have occurred prior to the service of the *amended* notice. The trial court could have reasonably concluded that a notice served *after* Sphar's dismissal could not remedy any POBRA violation arising from a defect in the original notice. CDCR's attack fails because it is directed at a finding that the trial court did not make. The trial court's finding was that the *original* notices were misleading.

CDCR's second contention in its opening brief is that substantial evidence does not support the trial court's conclusion that Martin and Sphar had been deprived of their rights under POBRA or its findings that CDCR failed to serve valid notices within the one-year limitations period.[9] CDCR claims that any defects in the original notices did not interfere with Martin's or Sphar's ability to respond to the charges at their *Skelly* hearings or to persuade the SPB that dismissal was not the appropriate penalty for their misconduct.

The trial court found that Sphar and Martin "were not served with a valid notice of adverse action within the one year time limit mandated by Government Code Section 3304(d)." This finding depends on the resolution of several underlying questions.

---

[8] However, it seems likely that the effective date of his dismissal was extended, as his *Skelly* hearing did not occur until December 2004. The record is silent on this point.

[9] Sphar and Martin ask this court to strike portions of CDCR's appellate reply brief on the ground that the reply brief contains new issues that were not raised in the opening brief. It is not necessary for us to strike any portions of CDCR's reply brief, as we disregard any new assertions in CDCR's reply brief that were not raised in its opening brief. The request is denied as moot.

First, did the one-year limitations period begin to run on November 3, 2003, when the incident allegedly occurred, or did it begin to run in February 2004, when Jaramillo reported the incident to CDCR? In order to determine whether the period began to run on the date of the alleged incident, the trial court had to determine whether "a person authorized to initiate an investigation" of the alleged misconduct was aware of the misconduct on the date of the incident. (Gov. Code, § 3304, subd. (d).)

The resolution of this issue involves a disputed question of fact. Sphar and Martin relied on excerpts from the transcript of Jaramillo's testimony before the SPB. Jaramillo testified that she had not reported the incident at the time it occurred because "I knew that Van Hoose knew about it." Shortly after the incident, Jaramillo saw Correctional Lieutenant Clarence Vanhoose close the door to the breakroom and then appear to be talking to several of the individuals who had been involved in the incident and gesturing in an upset manner. She could not hear what he was saying. "I was afraid of retaliation. And I thought that if Van Hoose knew about it and he was going—being the lieutenant there, he was going to do something about it, which he didn't." CDCR relied on Vanhoose's declaration.[10] Vanhoose declared that he had no knowledge of the alleged November 3, 2003 incident at the time of the alleged incident, and only learned of the allegations in March 2004.

The trial court could have credited Jaramillo's testimony and drawn the inference that Vanhoose was aware of the incident on the date it occurred. However, the resolution of that factual question does not mean that the limitations period began to run on the date of the incident unless the trial court also concluded that Vanhoose was "a person authorized to initiate an investigation" of the incident. The record contains no evidence whatsoever that Vanhoose was so authorized.

CDCR's operations manual states that "serious" misconduct, such as that alleged by Jaramillo, "shall be reported to the Regional OIA [office of internal affairs], Investigative Lieutenant, Chief Deputy Warden, Warden, Deputy RPA [regional prison administrator], RPA, or Hiring Authority." "The Hiring Authority shall designate who shall prepare a written report of the allegation and the format of the report." This report must then be submitted to the hiring authority. If the misconduct is serious, "the Hiring Authority shall request an investigation by the OIA."

Even if the trial court could have speculated that Vanhoose was an "Investigative Lieutenant" to whom serious misconduct should be *reported*,

---

[10] Vanhoose had also been the subject of a notice of adverse action in connection with this incident, but he settled with CDCR by agreeing to a demotion.

the fact that the incident should have been reported to him did not establish that he had the authority to initiate an investigation. The record contains no evidence that Vanhoose held the position of "Hiring Authority" or held any other position that gave him the authority to *initiate an investigation* of the alleged incident.[11] It follows that the record lacks substantial evidence that the limitations period commenced to run on the date of the incident. The only other alternative supported by the record is that the limitations period commenced to run in February 2004, when Jaramillo came forward. As both the original and amended notices were served within one year of February 2004, the trial court's finding that there was a statute of limitations violation cannot be upheld.

■ CDCR also challenges the trial court's decision that relief was warranted because the original notices were "misleading." The trial court's judgment cannot be upheld on this basis. The writ petition brought by Martin and Sphar was premised solely on Government Code section 3309.5, which authorizes relief only where there has been a POBRA violation. They did not allege a separate due process cause of action against CDCR, so the trial court's ruling cannot be upheld on the ground that there was some non-POBRA due process violation. Nowhere in POBRA is there any requirement that a notice of proposed discipline or a notice of adverse action identify the decision maker.[12] While the original notices were misleading about the identity of the decision maker who had chosen dismissal as the proposed discipline, this fact did not establish a violation of POBRA that could justify relief under Government Code section 3309.5.

■ Sphar and Martin relied in part on Government Code section 19574, but POBRA does not incorporate the requirements of that statute. (*Sulier v. State Personnel Bd.* (2004) 125 Cal.App.4th 21, 27–29 [22 Cal.Rptr.3d 615].) Hence, a violation of Government Code section 19574 would not justify relief under Government Code section 3309.5. But even if it did, there was no evidence of a violation of Government Code section 19574, subdivision (a). Under Government Code section 19574, a formal notice of adverse action[13] is required to provide an employee with "(1) a statement of the nature of the adverse action; (2) the effective date of the action; (3) a statement of the reasons therefor in ordinary language; (4) a statement advising the employee

---

[11] The investigation of the November 2003 incident was actually requested by the warden.

[12] POBRA does not require a notice of proposed discipline to identify the proposed level of discipline. (*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 320–324 [74 Cal.Rptr.3d 891, 180 P.3d 935].) While the original notices were misleading about the identity of the decision maker *who had chosen dismissal* as the proposed discipline, the notices did not inaccurately reflect that Pliler was the decision maker who had decided to propose discipline.

[13] A notice of proposed discipline is required under POBRA. A formal notice of adverse action is required under Government Code section 19574. The two notices may be combined, but the distinct statutory requirements may be satisfied independently.

of the right to answer the notice orally or in writing; and (5) a statement advising the employee of the time within which an appeal must be filed." (Gov. Code, § 19574, subd. (a).) The original notices met all of these requirements. Government Code section 19574 does not require the notice to inform the employee of the identity of the decision maker.

As the record fails to support a finding of any violation of POBRA, the trial court was not authorized to grant Sphar and Martin the relief they sought under Government Code section 3309.5.

### III.   Disposition

The judgment is reversed. CDCR shall recover its appellate costs.

Bamattre-Manoukian, Acting P. J., and McAdams, J., concurred.