Filed 11/13/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| BARON R. EARL,<br><br>       Plaintiff and Appellant,<br><br>  v.<br><br>STATE PERSONNEL BOARD,<br><br>       Defendant and Respondent,<br><br>DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>       Real Party in Interest and Respondent. | C074677<br><br>(Super. Ct. No. 34-2012-80001184-CU-WM-GDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, Timothy M. Frawley, Judge. Reversed with directions.

Daniel M. Lindsay and Janice R. Shaw for Plaintiff and Appellant.

1

Mastagni Holstedt, David E. Mastagni, Isaac S. Stevens, Jeffrey R.A. Edwards, and Ian B. Sangster for Placer County Deputy Sheriff's Association, Sacramento Police Officer's Association, Sacramento Area Firefighter's Local 522, Peace Officers Research Association of California, Peace Officers Research Association of California Legal Defense Fund, as Amici Curiae on behalf of Plaintiff and Appellant.

Alvin Gittisriboongul and Heather Glick for Defendant and Respondent.

Stephen A. Jennings for Real Party in Interest and Respondent.


Baron R. Earl (Earl), a parole agent, was disciplined by his employer, the California Department of Corrections and Rehabilitation (Department) for conducting a purportedly unlawful search of a residence, and after an administrative hearing the discipline was upheld by the State Personnel Board (Board). Earl appeals from the trial court's denial of his administrative mandamus petition, seeking to overturn the Board's decision. He first contends that his motion to dismiss should have been granted due to lack of timely notice. He next argues that no substantial evidence shows the search was unlawful, adding that because the law applicable to the search was unclear, his conduct-- if errant--is unlikely to reoccur. Therefore, he argues, the level of discipline by the Department and later upheld by the Board reflects an abuse of discretion.

Because we agree that notice was untimely, we need not reach Earl's remaining contentions. We reverse with directions to issue a writ commanding the Board to grant Earl's motion to dismiss.

## BACKGROUND

Because of the narrowness of our holding, the facts surrounding the search and the subsequent discipline imposed are not relevant.

The parties do not dispute that the Department learned of Earl's actions during a hearing regarding another employee conducted on May 27, 2009, and "served a Letter of Intent on Earl by certified mail on May 27, 2010," notifying him that the investigation was complete and that the "allegations of an improper entry . . . were sustained." Earl's

2

position that this notice was not adequate under the relevant statute was rejected by the Board, which upheld discipline, and the trial court, which denied Earl's administrative mandamus petition.

Earl timely appealed from the judgment.

## DISCUSSION

Earl contends he was entitled to actual notice of the contents of the "Letter of Intent" within one year of the date of discovery, not service by mail as perfected by the Department. Amici curiae, groups of public safety officers, concur.[1] We agree with this position.

We review questions of law, which would include statutory interpretation, de novo. (See *Pollak v. State Personnel Bd.* (2001) 88 Cal.App.4th 1394, 1404.)

Within the state civil service laws, Division 5, Part 2 of the Government Code, provision is made for service of specified documents, including a notice of disciplinary action, in part as follows: "The appointing power shall provide service of the following actions by personal service or by certified mail with return receipt requested or express service carrier." (Gov. Code, § 18575, subd. (a)(1).)[2] Service by certified mail "is deemed complete as provided for in" Code of Civil Procedure section 1013, subdivision (a). (§ 18575, subd. (a)(2)(B).)[3] A different section partly provides: "Adverse action is valid only if a written notice is served on the employee prior to the effective date of the

---

[1] Amici curiae are the Placer County Deputy Sheriff's Association, Sacramento Police Officer's Association, Sacramento Area Firefighter's Local 522, Peace Officers Research Association of California (PORAC), and PORAC Legal Defense Fund. Although the Board has filed a respondent's brief, it takes no position on the issue of timely notice.

[2] Undesignated statutory references are to the Government Code.

[3] The referenced statute provides for five extra days in which to perform any act, if service is by mail within California. (See Code Civ. Proc., § 1013, subd. (a).)

action, as defined by board rule. The notice shall be served upon the employee either personally or by mail." (§ 19574, subd. (a).)

However, *peace officers* are subject to an entirely separate statute, be they state or local peace officers, namely, the Public Safety Officers Procedural Bill of Rights Act (popularly known as POBRA; § 3300 et seq.), located in Division 5, Part 1 of the Government Code, which provides in relevant part as follows:

> "Except as provided in this subdivision and subdivision (g), no punitive action . . . shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct. . . . In the event that the public agency determines that discipline may be taken, it shall complete its investigation *and notify the public safety officer* of its proposed discipline by a Letter of Intent or Notice of Adverse Action articulating the discipline that year, except as provided in paragraph (2).[4] The public agency shall not be required to impose the discipline within that one-year period." (§ 3304, subd. (d)(1), emphasis added.)

Earl persuasively contends that the word "notify" as used in the emphasized portion of the just-quoted statute means actual notification, not constructive notice, such as by mail. He relies on the rule, stated in many cases, that "[u]nder settled principles of statutory construction, '[a] statute requiring that a notice shall be given, but which is silent as to the manner of giving such notice, contemplates personal service thereof.' " (*Hoschler v. Sacramento City Unified School Dist.* (2007) 149 Cal.App.4th 258, 264 (*Hoschler*); see *Simpson v. City of Los Angeles* (1953) 40 Cal.2d 271, 280-281 (*Simpson*); *Stockton Automobile Co. v. Confer* (1908) 154 Cal. 402, 408-409 (*Stockton*); *Johnson v. Barreiro* (1943) 59 Cal.App.2d 213, 218-219 (*Johnson*).)

---

**4** The exceptions referenced are not relevant. (See § 3304, subd. (d)(2).)

The Department contends that "notify" in section 3304, subdivision (d) embraces both actual and constructive notice, relying on a somewhat strained--and, as we explain, flawed--chain of reasoning, as follows: (1) In *Mays v. City of Los Angeles* (2008) 43 Cal.4th 313 (*Mays*), the California Supreme Court interpreted section 3304, subdivision (d) to give an agency a full year to conduct an investigation into misconduct, after discovery of the facts; (2) Because giving actual notice to a public safety officer would often take more than a day, requiring actual notice would encroach on the year allotted to investigation; (3) To avoid this, the term "notify" in section 3304, subdivision (d) must be read to mean that *service* of notice on the last day of the investigative year suffices, and section 18575 provides that service is complete on the day of mailing; and (4) Therefore, the service of notice by mail on the last day of the year in this case comported with statutory requirements.

The trial court, relying on *Mays* and our decision in *Sulier v. State Personnel Bd.* (2004) 125 Cal.App.4th 21 (*Sulier*), agreed with the Department. However, *Mays* and *Sulier* actually *undermine* the Department's argument, as we shall explain.

In *Mays*, our Supreme Court "granted review to address the question of whether the notice required by section 3304(d) is satisfied by informing an accused officer, within the statutory one-year period, that the agency proposes that certain misconduct charges 'be adjudicated by a Board of Rights.' " (*Mays*, *supra*, 43 Cal.4th at p. 317.) Our high court *held* that: "[T]he notice contemplated by the language and context of section 3304(d) is simply notice that the public agency, having completed its investigation into the alleged misconduct within the statutory period, has decided that it may take disciplinary action against the officer for specified misconduct. Although the agency is not *precluded* from proposing specific discipline at that time, it is not required by section 3304(d) to do so. A notice informing an officer of a proposed Board of Rights adjudication not only informs him or her that disciplinary action may be taken as the result of the investigation into the alleged misconduct—the notice required by the

5

statute—but also identifies the procedural mechanism by which the officer's punishment, if any, will be determined." (*Mays*, *supra*, 43 Cal.4th at pp. 317-318.)

In the course of its discussion, our Supreme Court explained *why* it was not necessary to provide notice of the specific punishment to be imposed, as follows:

> "Viewing the terms of section 3304(d) as a whole, it appears clear that the fundamental purpose of this provision is to place a one-year limitation on *investigations* of officer misconduct. The one-year period runs from the time the misconduct is discovered. Once the public agency decides that discipline may be warranted ('that discipline may be taken' (*ibid*.)), it must so inform the public safety officer (must 'notify the public safety officer of its proposed disciplinary action' (*ibid*.)). In this context, it seems most reasonable to interpret the language 'proposed disciplinary action' as referring to the agency's determination that 'discipline may be taken.' (*Ibid*.) *Not only completion of the investigation, but also the requisite notification to the officer, must be accomplished within a year of discovery of the misconduct*. This interpretation is consistent with the apparent purpose of the subdivision, which is to ensure that an officer will not be faced with the uncertainty of a lingering investigation, but *will know within one year of the agency's discovery of the officer's act or omission* that it may be necessary for the officer to respond in the event he or she wishes to defend against possible discipline.

> "A contrary conclusion—that section 3304(d) requires notification of the specific discipline contemplated by the public agency—prematurely would impose a requirement that is unreasonable in view of the timing of the notice. Section 3304(d) refers to an agency decision that 'discipline *may* be taken.' (Italics added.) The use of the conditional word 'may' demonstrates the preliminary nature of the proceedings at the time the notice is required under subdivision (d). It would be anomalous to require the public agency to reach a conclusion regarding potential discipline prior to any predisciplinary proceedings or response on the part of the officer. (See [*Sulier*, *supra*, 125 Cal.App.4th at p. 29] ['the notice contemplated by section 3304(d) is given at a time when the disciplinary authority has not necessarily committed itself to disciplining the employee . . . '].) Such a requirement also could have the practical effect of always leading the public agency to propose the maximum punishment in order to ensure it retained the full range of options in the subsequent disciplinary proceedings." (*Mays*, *supra*, 43 Cal.4th at pp. 321-322, some italics added.)

The Supreme Court bolstered this view with reference to other parts of the statute.[5] (*Mays*, *supra*, 43 Cal.4th at pp. 322-323.) Then the court emphasized that section 3304(d) functioned as a *limitations* period, to cut off the investigation, and stated: "It would be inconsistent with the general function of limitations statutes to treat the limitations provision contained in section 3304(d) as requiring the public agency to reach a firm conclusion with respect to the discipline or punishment actually intended to be imposed at a point ordinarily viewed as the *commencement* of an action." (*Id*. at p. 323.)

The trial court (incorporating the Board's decision) and the Department read *Mays* as holding a full one-year investigative period is a fundamental purpose of the statute. *Mays* does not hold that; in fact, its language suggests the opposite.

First, that point was not at issue in *Mays*. "[A] case is not authority for a point that was not actually decided by the court." (*Consumers Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal.3d 891, 902.)

Second, there is explicit language in *Mays* cutting against the Department's view: "*Not only completion of the investigation, but also the requisite notification to the officer, must be accomplished within a year of discovery of the misconduct.* This interpretation is consistent with the apparent purpose of the subdivision, which is to ensure that an officer will not be faced with the uncertainty of a lingering investigation, but *will know within one year of the agency's discovery of the officer's act or omission* that it may be

---

[5] Notably, section 3304, subdivision (f), provides: "If, after investigation and any predisciplinary response or procedure, the public agency decides to impose discipline, the public agency shall notify the public safety officer in writing of its decision to impose discipline, including the date that the discipline will be imposed, within 30 days of its decision, except if the public safety officer is unavailable for discipline." We note section 3304, subdivision (d) was amended in 2010 to abrogate the portion of *Mays* holding that the specific discipline to be imposed need not be included in the notice. (See *Neves v. Department of Corrections & Rehabilitation* (2012) 203 Cal.App.4th 61, 68, fn. 3 [discussing the change].) That amendment is not germane to the issues herein.

7

necessary for the officer to respond in the event he or she wishes to defend against possible discipline." (*Mays*, *supra*, 43 Cal.4th at pp. 321-322, emphasis added.)  This passage is fully consistent with a requirement of *actual* notice within that one year; indeed, the second emphasized portion assumes actual notice within one year.

Compounding its misreading of *Mays*, the Department then misreads *Sulier*, a case which also cuts against its position.  In *Sulier*, the Department sent Sulier a letter within one year of beginning its investigation, advising him that the investigation was over and revealing the proposed discipline.  Later, after the one-year period had run, the Department personally served Sulier with a formal notice of adverse action, with the detail required by section 19754.  (*Sulier*, *supra*, 125 Cal.App.4th at pp. 24-25.)  Sulier contended that " 'in order for the state to comply with the requirements of section 3304(d)[,] it must . . . adhere to the notice requirements contained in section 19574.' " (*Id.* at p. 26.)  We rejected that view, consistent with the later-decided *Mays* case, reasoning as follows:

> "[U]nder the plain language of section 3304(d), if the CDC desires to discipline an officer, then it must complete the investigation into the misconduct within one year of the discovery of the misconduct by a person authorized to start an investigation into the conduct.  If, at the conclusion of that investigation, the CDC 'determines that discipline may be taken,' *then it must give the officer notice of the 'proposed disciplinary action' during that same one-year time frame*.  [Citation.]  When the CDC actually '*decides* to impose discipline,' then it must notify the public safety officer in writing of its decision to impose discipline (§ 3304, subd. (f), italics added.).

> "Here, the CDC complied with this statute.  Within one year of initiating the investigation, it served a notice on Sulier informing him that the investigation was completed.  Further, that same letter identified the 'proposed discipline' of 'a one-step demotion to a Correctional Officer.'  Within 30 days of that notice, the CDC provided Sulier with a formal notice of adverse action under section 19574 notifying him of its decision to impose discipline on him." (*Sulier*, *supra*, 125 Cal.App.4th at p. 27, first emphasis added, second emphasis in original.)

8

Thus, *Sulier*, too, did not involve the question of notice within the one-year period but the difference between formal and informal notices.**6** And *Sulier* stated that notice must be "during that same one-year time frame" which cuts against the Department's argument to the contrary. (*Sulier*, *supra*, 125 Cal.App.4th at p. 27.)

*Sulier* also explained section 3304, subdivision (d) lies outside the state civil service system:

> "The language of section 3304(d) does not suggest any invocation of this formal civil service process. Unlike sections 19754 and 19635, section 3304(d) contains no reference to the service of a 'notice of adverse action.' It contains no reference to section 19574. Further, it does not reference any of the items specified in section 19574 except the nature of the proposed discipline. As we have already stated, all section 3304(d) requires is that the agency 'notify the public safety officer of its proposed disciplinary action within that year.' We conclude this does not invoke the requirements of section 19574.

---

**6** Similarly, *In re McCormick* (2003) SPB Dec. No. 99-1549 did not involve the issue posed by this case. There an envelope containing notice was mismarked by one day, and the Board applied the rule from section 6800 that days are counted "by excluding the first day, and including the last," except for holidays, which are also excluded. (*McCormick*, *supra*, at p. 20.) Because the Department does not make any claim about section 6800 in this appeal, we fail to see the relevance of *McCormick* to this case. Indeed, the Department provides no analysis of *McCormick* whatsoever, but merely claims it supports the Department's view. We note that in its procedural summary, *McCormick* explains that a *prior* administrative decision in the same case had concluded that the Department "had failed to serve the [Notice of Adverse Action] upon appellant within one year after it began its investigation, as required by" section 3304, and *that* decision had been set aside by a trial court, which found the Department "timely served" the employee, the decision was appealed, but we dismissed the appeal. (*McCormick*, *supra*, at pp. 12-13.) To the extent the Department may have intended to reference this portion of *McCormick*, it is improper to do so, because it merely summarizes a prior, nullified administrative decision, and references an unpublished action by this court in dismissing an appeal--dismissed because the (appellant) Department was not an aggrieved party. (*Cambra, etc. v. State Personnel Bd. et al.* (Nov. 18, 2002, C040762) [nonpub. opn.].) In any event, neither our prior order of nor the nullified prior administrative decision in *McCormick* are citable authority.

"The context of section 3304(d), both in terms of who it applies to and where it is located in the Government Code, vitiates Sulier's argument. First, section 3304(d) applies to both state and local agency employees, not solely state civil service employees. (See, e.g., *Stanton v. City of West Sacramento* (1991) 226 Cal.App.3d 1438, 1443 ['the procedural details of an administrative appeal required by section 3304, subdivision (b) are to be formulated by the local agency'].) Thus, it makes sense that section 3304(d) does not necessarily incorporate section 19574. Second, section 3304(d) is contained in a completely separate part of the Government Code from the state civil service portion of the Government Code. Thus, there is no logical reason to infer that section 3304(d) incorporates the notice of adverse action requirements of section 19574." (*Sulier*, *supra* 125 Cal.App.4th at pp. 28-29, fn. omitted.)

Thus, *Sulier* declined to import into section 3304, subdivision (d) provisions of the state civil service system regarding notice, because section 3304, subdivision (d), located in Division 5, Part 1 of the Government Code, applies to both a narrower class (public safety officers) and a broader class (state and local employees) than do the state civil service laws found in Division 5, Part 2 of the Government Code. (See § 3301.)

If we did not allow the Department to avail itself of section 19574 in *Sulier*, because that section was located within the state civil service system, we fail to comprehend how *Sulier* would not apply with equal force to the Department's claim that section 18575--also contained in the state civil service laws--should apply. (See also *Benefield v. Department of Corrections & Rehabilitation* (2009) 171 Cal.App.4th 469, 477 ["Sphar and Martin relied in part on Government Code section 19574, but POBRA does not incorporate the requirements of that statute"].) Thus, *Sulier* does not bolster but instead undermines the Department's contentions.

As we have explained, clearly the notification itself is required to occur within a year of the discovery of the misconduct. But what precisely did the Legislature mean by "notify the public safety officer" in section 3304, subdivision (d)? We presume the Legislature is aware of judicial decisions. (*Zellerino v. Brown* (1991) 235 Cal.App.3d 1097, 1106.) "When the Legislature uses language which has received definitive judicial

10

construction we presume it intended to adopt that construction." (*Id*. at p. 1107.)  As explained *ante*, for many years an unbroken line of California courts have held that " '[a] statute requiring that a notice shall be given, but which is silent as to the manner of giving such notice, contemplates personal service thereof.' " (*Hoschler*, *supra*, 149 Cal.App.4th at p. 264; see *Simpson*, *supra*, 40 Cal.2d at pp. 280-281 [notice of impounded dog; "since there is nothing elsewhere in the ordinance to indicate that any particular form of notice is contemplated, the owner, under the authorities, is entitled to actual notice"]; *Stockton*, *supra*, 154 Cal. at pp. 408-409 [notice of highway obstruction; "It may be broadly stated that where a statute or contract requires the giving of notice, and there is nothing in the context, or in the circumstances of the case, to show that any other form of notice was intended, personal notice will be required"]; *Johnson*, *supra*, 59 Cal.App.2d at pp. 218-219 ["in the absence of a statute authorizing the service of a notice by mail, a notice so served is ineffective unless and until it is received"].)  Although those cases--which are merely a few representatives of their ilk--involved different laws and circumstances, the interpretive *rule* they apply has not changed.  We presume the Legislature is aware of that rule, and therefore meant *personally notify* in subdivision (d).  Thus actual notification must occur within the same year as the investigation.

Although the Department dismissed it cavalierly, we find our prior decision in *Hoschler* helpful.  There, we interpreted a provision of the Education Code which provided that a second-year public teacher would be deemed "reelected" to a third year, and achieve tenure, unless timely notified of non-reelection:  "The governing board *shall notify the employee*, on or before March 15 . . . of the decision to reelect or not reelect the employee for the next succeeding school year to the position.  In the event that the governing board does not give notice pursuant to this section on or before March 15, the employee shall be deemed reelected for the next succeeding school year." (Educ. Code, § 44929.21, subd. (b), emphasis added.)  However, the school district had sent notification by certified mail, which the teacher did not *receive* until after March 15.  We

11

applied the settled interpretive rule described above, and held that notice was untimely. (*Hoschler*, *supra*, 149 Cal.App.4th at pp. 263-264.) We rejected a claim that other Education Code sections providing for *service* by mail should be implied, emphasizing that our conclusion resulted from ascertaining the intent of the Legislature:

> "The statute requires the District to give notice, but is silent as to the method. When the meaning of a statute is not clear from the plain meaning of the words used, we turn to a variety of aids including rules of statutory construction, with the objective of determining the intent of the Legislature. [Citation.]

> "Here, the statute is silent on the method of notice. Under accepted canons of statutory interpretation, where a statute does not prescribe the method of notice, personal service is contemplated. Thus, unless a different purpose is found within the statutory scheme to justify an *exception*, the presumption of the personal service method of notice applies." (*Hoschler*, *supra*, 149 Cal.App.4th at p. 266.)

We see no reason not to apply the same interpretive rule here, where the Department was required to "notify the public safety officer," as we did in *Hoschler*, where the district was required to "notify the employee." In both cases, certified mail *received after* the outer limit of the relevant time period was not sufficient notification.[7]

Accordingly, the Board erred in failing to dismiss the action (see AR 948), and the trial court erred when it declined to issue a writ compelling the Board to do so.

---

[7] We emphasize that this is not a case of willful evasion of notice. (Cf. *Sullivan v. Centinela Valley Union High School Dist.* (2011) 194 Cal.App.4th 69 [teacher evaded notice with knowledge of intended nonretention decision].) That issue is not before us.

**DISPOSITION**

The judgment is reversed with directions to the trial court to issue a writ of mandate commanding the Board to grant Earl's motion to dismiss.  The Department shall pay Earl's costs of this appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)


                                                      DUARTE          , J.


We concur:


     NICHOLSON     , Acting P. J.


     BUTZ           , J.