Filed 6/11/18; pub. & mod. order 7/6/18 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| RICHARD PAUL FISHER, | |
| Plaintiff and Appellant, | C081957 |
| v. | (Super. Ct. No. 34201480001980CUWMGDS) |
| STATE PERSONNEL BOARD, | |
| Defendant and Respondent. | |

While serving as an administrative law judge for the State Personnel Board (SPB), Richard Paul Fisher joined the law firm of Simas & Associates as "of counsel." Simas & Associates specialized in representing clients facing administrative actions, including those heard by the SPB. Indeed, the Simas law firm represented a CalTrans employee in a high-profile case that was being heard before the SPB while Fisher was serving his dual roles. Unaware Fisher was working for the very law firm representing the CalTrans employee, the SPB administrative law judge hearing the high-profile case discussed the matter in a meeting attended by Fisher and even sent a draft opinion to her SPB

1

colleagues, including Fisher. Fisher, however, never informed anyone at the SPB of his connection with the Simas law firm. Fisher's connection with the law firm came to light only when another administrative law judge was asked about the matter during a local bar function. The SPB dismissed Fisher from his position as an administrative law judge.

Fisher challenged the dismissal, which was affirmed after a hearing before the Office of Administrative Hearings.[1] After a petition for writ of administrative mandamus was denied by the superior court, Fisher timely filed this appeal. On appeal, Fisher focuses his arguments on the proposition that he should be reinstated to his position because he was never personally served with notice that working for a law firm specializing in administrative matters constituted an impermissible activity for an SPB administrative law judge. Fisher additionally argues that (1) the 2013 incompatible activities statement adopted by the SPB was "an invalid 'underground regulation,' " (2) conflicting evidence "fairly detracts from the findings" that he engaged in neglect of duty and other failures of good behavior, (3) the SPB's decision "failed to address the *Skelly*[2] violation" of a missing document that was not disclosed to him prior to his hearing, and (4) his termination from employment at the SPB was not a just and proper penalty.

We reject Fisher's arguments that an SPB administrative law judge must expressly be informed it is impermissible to work for a law firm actively litigating cases before the

---

[1] The matter was transferred from the SPB to the Office of Administrative Hearings to avoid a conflict of interest and due to the fact that several key witnesses were SPB administrative law judges.

[2] *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194.

SPB. Fisher's conduct violated Government Code section 19990[3] and the SPB's incompatibility activities statements that were in effect throughout his tenure as an SPB administrative law judge. We determine substantial evidence supports the findings of the administrative law judge who heard Fisher's case that Fisher "displayed an appalling lack of judgment when he became of counsel with Simas & Associates" and "continued to demonstrate poor judgment when he failed to disclose his of counsel relationship to SPB." The SPB did not abuse its discretion by dismissing Fisher. These conclusions obviate the need to consider Fisher's remaining contentions. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL HISTORY

In April 2010, Fisher was appointed to the position of administrative law judge with the SPB. In June 2013, the SPB served on Fisher a notice of adverse action in which the agency sought his dismissal. The SPB advised Fisher he was entitled to respond to the notice within 10 days. Fisher declined to request a hearing within the 10 days. In July 2013, Fisher filed an answer and appeal in which he denied the charges, asserted defenses, and requested that the matter be heard by the Office of Administrative Hearings.

*Office of Administrative Hearings Decision*

In April 2014, Office of Administrative Hearings Administrative Law Judge Jonathan Lew conducted a hearing on Fisher's appeal. In a 31-page written decision, Administrative Law Judge Lew upheld the dismissal and made the following findings and determinations.

---

[3] Undesignated statutory references are to the Government Code.

3

## 1. The SPB's Incompatible Activities Statements

At the time of Fisher's appointment, the SPB had in place a statement of incompatible activities that provided in pertinent part:

"An Officer or employee who is engaging in, or plans to engage in any employment, activity, or enterprise which might conceivably be incompatible, or interfere in any way with his or her duties as a State officer or employee, whether or not specifically covered by the Statement must consult with his or her supervisor, who will take the matter up with the Executive Officer or his or her designee. The Executive Officer or his or her designee will make a decision as to the appropriateness of the employment, activity, or enterprise."

In January 2013, the SPB issued a substantively similar incompatible activities statement.[4] Much like the earlier statement, the 2013 incompatible activities statement declared:

"It is not the desire of SPB to inquire into the private affairs of its employees. However, cooperation is requested of all employees in avoiding any activity that will cause embarrassment to this agency, the [SPB] or the State of California. An employee who is engaging in, or plans to engage in, any employment, activity, or enterprise which conceivably might be incompatible, or interfere in any way with his/her duties as a State employee, is asked to consult with the personnel office of the California Department of Human Resources (CalHR) for advice."

The 2013 incompatible activities statement further elaborates that administrative law judges may not engage in any of the following:

"1. Using the prestige or influence of a State office or employment for the employee's private gain. [¶] 2. Using State time, facilities, equipment, or supplies for the officer or employee's private gain or advantage, or the private gain or advantage of another. [¶] 3. Using or having access to confidential information acquired by virtue of State employment for the

---

**4**     For the sake of consistency we refer to the 2013 revision as an incompatible activities statement even though SPB titled the issuance as an "Incompatible Activities Policy."

4

private gain or advantage of providing confidential information to persons to whom issuance of this information has not been authorized. [¶] . . . [¶] 5. Performance of an act in other than his/her capacity as a State officer or employee knowing that such act may later be subject, directly or indirectly, to the control, inspection, review, audit or enforcement by the officer or employee or by the agency by which he/she is employed."

The 2013 incompatible activities statement further disallowed "[a]ccepting employment which adversely affects the employee's performance or brings discredit to the State or the SPB."

At the hearing, Fisher did "not recall being provided with a physical copy of SPB's" incompatible activities statement. However, he remembered completing an ethics training course at the SPB during which he acknowledged he " 'had carefully read all of the instructional materials.' " These instructional materials "stated in three places that SPB was required to have an [incompatible activities statement], and that in two other places the reader was instructed to 'examine' SPB's [incompatible activities statement]." Moreover, Fisher, "as an [administrative law judge], also heard cases and rendered decisions on matters involving state employees being subject to discipline for violating their department's [incompatible activities statement] and related policies." Thus, Fisher "understood that a state employee was subject to his or her agency's applicable [incompatible activities statement]."

Fisher had access to the SPB's intranet that contained the incompatible activities statement. The SPB's administrative law judges "have access to this intranet, as it was used as a resource in performing their regular duties." Administrative Law Judge Lew found that "[i]t was established that [Fisher] had ready access to SPB's [incompatible activities statement] over the course of his employment."

## 2. *Fisher Becomes Of Counsel to the Simas & Associates Law Firm*

In 2011, Fisher was asked by his longtime friend and former colleague at the Department of Justice, Steve Simas, to join his law firm as of counsel. Simas &

Associates is "a boutique firm with a primary specialty in administrative law." At the hearing, "Simas confirmed that enhancing his law firm's prestige was a factor in having [Fisher] become of counsel to Simas & Associates." Fisher was aware Simas represented clients before the SPB because Fisher had personally presided over a prehearing and settlement conference in which Simas appeared as counsel on behalf of a party.

Administrative Law Judge Lew made the finding Fisher "was aware of the possibility of, and the need to avoid conflicts of interest if he became of counsel at Simas & Associates. He and [Simas] discussed building and maintaining an 'ethical wall' so that [Fisher] would not be asked to consult on a case that could conceivably come before SPB." However, "[t]he ethical wall was based upon an oral agreement between [Fisher] and [Simas]. It was never reduced to writing."

### 3. *Fisher's Failure to Request Permission or Disclose his Of Counsel Status*
### *Failure to request permission.*

Fisher never requested permission from his supervisors at the SPB prior to joining Simas & Associates. Moreover, Fisher never informed anyone at the SPB that he had taken the of counsel position. Fisher asserted "that he did not believe it was important at the time for his supervisors to know that he was associated with a law firm that was appearing before SPB." Fisher stated he knew of at least one other SPB administrative law judge who was performing outside legal work. Fisher also asserted he had received permission from the chief administrative law judge and then-presiding administrative law judge to serve as of counsel at Simas & Associates. Administrative Law Judge Lew expressly found Fisher's assertion "was simply not credible." To the contrary, the chief

6

administrative law judge and then-presiding administrative law judge "testified adamantly *and persuasively* otherwise."**5** (Italics added.)

### *Nondisclosure on Form 700.*

In his capacity as an administrative law judge, Fisher was required annually to submit a Form 700 (Statement of Economic Interest). The reporting period for the 2013 Form 700 encompassed the period during which he performed compensated work for Simas & Associates. The Form 700 instructions "directed him to report not only income earned from outside sources, but any job title or business position he held during the operating period, even if he earned no income in that period." Fisher, however, "did not disclose his of counsel relationship with Simas & Associates on the Form 700, effectively hiding his outside work with the law firm from his employer."

Fisher stated he earned only $450 from Simas & Associates in 2012, which was less than the $500 reportable minimum income for Form 700. Administrative Law Judge Lew recounted that Fisher "did not believe his of counsel status constituted a 'job title' or 'business position' for purposes of Form 700, Schedule C disclosures." Fisher made no effort "to verify his interpretation of 'job title' or 'business position' with SPB, the Fair Political Practices Commission or any other public authority."

---

**5** Appearing on his own behalf at oral argument, Fisher asserted he had requested his superiors to grant permission to engage in outside legal work. Fisher made these assertions without acknowledging that Administrative Law Judge Lew expressly rejected Fisher's testimony on this point. Indeed, Fisher misrepresented to this court that Administrative Law Judge Lew had not made a credibility determination regarding Fisher's claim regarding requesting permission to engage in outside legal work. Fisher's misrepresentation of facts conclusively established by the record violated his duty of candor to this court. (Bus. & Prof. Code, § 6068, subd. (d) ["It is the duty of an attorney . . . never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law"].)

***Failure to disclose relationship to Simas & Associates in connection with high-profile case pending before the SPB.***

In 2012 and 2013, Simas & Associates served as legal counsel to disciplined CalTrans employee, Brian Liebich, in a high-profile case pending before the SPB. During this period, Fisher served both as an SPB administrative law judge and as of counsel to the Simas & Associates law firm. In December 2012, Fisher attended a meeting of SPB administrative law judges during which Administrative Law Judge Barbara Allen-Brecher discussed her perception of the case. Allen-Brecher was the presiding administrative law judge in the *Liebich* matter and discussed issues she was encountering in writing the decision. Fisher did not recuse himself but remained for the entirety of the discussion even though he was aware Simas & Associates represented Liebich. Fisher did not inform his colleagues about his of counsel relationship with Simas & Associates.

In February 2013, Allen-Brecher e-mailed a draft of her proposed decision in *Liebich* for review and comment to a small group of her administrative law judge colleagues. Allen-Brecher included Fisher because she respected his work. Allen-Brecher did not know about Fisher's relationship with Simas & Associates. Fisher opened the e-mail and read the proposed outcome. Although Fisher did not forward the decision to Simas & Associates, he also did not inform any of his SPB colleagues of his relationship with the law firm.

***Website of Simas & Associates.***

Simas & Associates maintains a Website used, in part, as a marketing tool to attract clients. As Administrative Law Judge Lew found: "On its website, Simas & Associates touts itself as a 'leader' in administrative law and the administrative hearing process. It boasts that its experienced staff, including 'of counsel,' give prospective clients an 'advantage at your administrative hearing.' [¶] In January 2012, the firm's website was updated to include [Fisher's] biography. Under the title 'Law Firm Staff

8

Profiles' the website detailed [Fisher's] prior education and legal work experience. It then noted: '[Fisher] currently serves as an Administrative Law Judge for the State of California.' In the same paragraph, the website indicated that, as an attorney, [Fisher] had 'personally litigated or has overseen the prosecution of over one hundred administrative hearings, including cases before the Public Employment Relations Board, the [SPB], as well as licensing actions before the Office of Administrative Hearings.' " Elsewhere on the Simas & Associates Website, it advertised that "[Fisher] is an Administrative Law Judge at the [SPB]."

Fisher "explained that he sought to ensure that the description he *did* approve, 'Administrative Law Judge for the State of California' would put him into the 'nondescript class' of some 500 [administrative law judges] serving statewide, as opposed to being identified as one of only 12 [administrative law judges] working for SPB." (Italics added.) As Administrative Law Judge Lew noted, Fisher "acknowledged that any link between his position as an [administrative law judge] and his employment with SPB could harm SPB, and thus his purported instruction to [Simas] regarding the firm's website. Any such instruction was never reduced to writing, nor was it communicated by [Simas] or [Fisher] to" the Website's designer.

### *Fisher's work for Simas & Associates.*

Fisher was available to advise clients of Simas & Associates. He provided actual legal advice in connection with a CalTrans employee who had issues with her career executive assignment status. Cases involving decisions about a career executive assignment status for CalTrans employees are heard by SPB administrative law judges. "By legal memorandum transmitted on May 21, 2012, from [Fisher's] SPB email address, he summarized his thinking on what claims, if any, the employee might have against CalTrans."

9

***Discovery of Fisher's relationship with Simas & Associates by another SPB administrative law judge.***

SPB Administrative Law Judge Erin Koch-Goodman attended a local bar association function in May 2013 when someone asked whether her colleague at the SPB was the same person "who worked at Simas & Associates." Koch-Goodman removed herself from the conversation and later searched the Simas & Associates Website. Koch-Goodman informed the chief administrative law judge who removed Fisher from any cases he was scheduled to hear. The presiding administrative law judge requested that the SPB's merit appeals manager call the Simas law firm. The manager made the call and identified herself as a potential client who worked for the State of California and was potentially subject to discipline. The law firm's representative confirmed they handled disciplinary matters and stated Fisher "was 'of counsel' and that he would work in collaboration with one of the law firm's attorneys."

### 4. *Decision by Administrative Law Judge Lew*

Based on his findings, Administrative Law Judge Lew determined Fisher's conduct amounted to violations of statute and the SPB's incompatible activities statements as follows:

***Of counsel relationship with Simas & Associates.***

Fisher violated section 19572, subdivision (d), by engaging in inexcusable neglect of duty. This inexcusable neglect of duty was based on Fisher's failure to exercise due diligence before joining Simas & Associates as of counsel without first obtaining permission of the SPB or CalHR. Fisher joined the law firm even though he was aware of the potential for conflicts as demonstrated by his "attempt to create an ethical wall at Simas & Associates" and his acknowledgment that any link between his position at the SPB and his relationship with the law firm could harm the SPB. Moreover, Fisher allowed the law firm to use his position as an administrative law judge on its Website. He thus "allowed Simas & Associates to use the prestige of the State of California and by

10

extension SPB, to advance his and the firm's pecuniary interests. [Fisher's] suggestion that the descriptor 'Administrative Law Judge for the State of California' put him within the 'nondescript class' of some 500 ALJS serving statewide, as opposed to being identified as one of only 12 [administrative law judges] working for SPB, is disingenuous and unavailing."

As to the ethical wall, Administrative Law Judge Lew found Fisher's "broad assertion that he violated none of the causes of action alleged in the [notice of adverse action] by virtue of the ethical wall in place at Simas & Associates is rejected. The evidence did not establish that he entered into a transparent, legal, and ethical of counsel relationship with the Simas firm, and maintained inviolate an ethical wall."

Administrative Law Judge Lew found Fisher violated sections 19572, subdivision (r), and 19990, as well as the SPB's incompatible activities statements. Although Fisher was required to notify the SPB or CalHR of his relationship with Simas & Associates, he did not do so. By entering into an of counsel relationship, Administrative Law Judge Lew found he used the prestige of the SPB for the law firm's private gain and brought discredit to the SPB.

Administrative Law Judge Lew determined Fisher's access to confidential information about the *Liebich* case would have brought discredit to the SPB if it would have been made public. Consequently, Fisher's conduct "could only subject SPB and [Fisher's administrative law judge] position to discredit."

***Access to Confidential Information***.

As a separate basis for finding Fisher had engaged in wrongful behavior, Administrative Law Judge Lew determined Fisher had a duty to disclose his relationship with the Simas law firm and to excuse himself from the discussion of the *Liebich* case occurring during a meeting of SPB administrative law judges. Fisher also wrongfully opened and read the draft decision in the *Liebich* case. Notably, "[w]hen his of counsel

11

relationship became known, his SPB colleagues expressed shock, disappointment and feelings of betrayal . . . ." "Allen-Brecher's first reaction to hearing that [Fisher] was of counsel to the Simas law firm was stunned disbelief. She was very disappointed in [Fisher], and felt a sense of betrayal. She believes that his association with Simas & Associates has 'sullied the reputation' of SPB for neutrality, as well as its judges." Fisher's conduct during the meeting in which the *Liebich* discussion occurred and his reading of the proposed Liebich decision "could only subject SPB to discredit, as well his SPB employment."

### *Failure to make necessary disclosures*.

Administrative Law Judge Lew concluded Fisher had a duty to disclose his relationship with Simas & Associates on his 2013 Form 700. "Those instructions directed him to report business positions or job titles held in 2012. His explanation that being 'of counsel' to a law firm is neither a business position nor a job title is without any outside support. [Fisher] made no attempt to verify his interpretation of 'job title' or 'business position' with SPB, the Fair Political Practices Commission or any other public authority. He acknowledged that he was required to use 'all reasonable diligence' in preparing the Form 700. He did not." As a consequence, Fisher engaged in conduct that "causes the public to lose confidence in SPB and government . . . ."

### *Violation of the California Code of Regulations*.

Administrative Law Judge Lew determined Fisher's conduct violated California Code of Regulations, title 2, section 56.5, where it provides that a presiding officer shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the position, prevent personal and other relationships to influence the judgment of the presiding officer, and to avoid lending the prestige of his or her office in any manner that advances the pecuniary interest of the presiding officer. Fisher "was aware of the duties imposed by section 56.5 more than [a] year before the regulation went

12

into effect.  On January 18, 2012, [Presiding Administrative Law Judge] Johnson, then an attorney for SPB, sent all of the [administrative law judges] a complete set of the proposed regulations, including section 56.5."  For his violations of section 56.5, Administrative Law Judge Lew concluded Fisher was subject to discipline under section 19572, subdivision (t).

*Penalty*.

Administrative Law Judge Lew determined Fisher's dismissal from his position as administrative law judge was the just and proper remedy.

The SPB adopted the decision of Administrative Law Judge Lew in August 2014.

### *Action in the Superior Court*

In November 2014, Fisher filed a petition for writ of mandate in superior court by which he sought to overturn the SPB's decision to dismiss him.  The SPB opposed the petition.  In February 2014, the trial court denied the petition and summarized the matter:  "Fisher's defense can be summed up as follows:  'I didn't know that, as an Administrative Law Judge for the [SPB], I couldn't also do outside legal work for a firm that represents employees in matters before the [SPB].'  To put the defense in these words is almost to dismiss it outright."  From the judgment of dismissal, Fisher appeals.

## DISCUSSION

## I

### *Standards of Review*

Under Code of Civil Procedure section 1094.5 judicial review of a final administrative decision "shall extend to the questions whether the respondent [agency] has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.  Abuse of discretion is established if the respondent [agency] has not proceeded in the manner required by law, the order or

13

decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).)

The "SPB is a 'statewide administrative agency which is created by, and derives its adjudicatory power from, the state Constitution. (Cal. Const., art. VII, §§ 2 [membership and compensation of board], 3 ["(a) The board shall enforce the civil service statutes and, by majority vote of all its members, shall . . . review disciplinary actions"]. . . .) Under that constitutional grant, [SPB] is empowered to "review disciplinary actions." In undertaking that review, [SPB] acts in an adjudicatory capacity. "The State Personnel Board is an agency with adjudicatory powers created by the California Constitution." [Citation.] As such [SPB] acts much as a trial court would in an ordinary judicial proceeding. Thus, [SPB] makes factual findings and exercises discretion on matters within its jurisdiction. On review the decisions of [SPB] are entitled to judicial deference. The record must be viewed in a light most favorable to the decision of [SPB] and its factual findings must be upheld if they are supported by substantial evidence. [Citation.]' " (*California Youth Authority v. State Personnel Bd.* (2002) 104 Cal.App.4th 575, 584, quoting *Dept. of Parks & Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813, 823.) Under the substantial evidence test, "[w]e do not reweigh the evidence; we indulge all presumptions and resolve all conflicts in favor of the board's decision. Its findings come before us 'with a strong presumption as to their correctness and regularity.' " (*Camarena v. State Personnel Bd.* (1997) 54 Cal.App.4th 698, 701, quoting *Pereyda v. State Personnel Bd.* (1971) 15 Cal.App.3d 47, 50.)

We review questions of law under the independent standard of review. (*California Dept. of Corrections v. State Personnel Bd.* (2004) 121 Cal.App.4th 1601, 1611 (*Corrections*).) "We respect but do not necessarily defer to SPB's interpretations of the governing statutes. (*Kuhn v. Department of General Services* [(1994)] 22

14

Cal.App.4th 1627, 1639, [we apply a ' "respectful but nondeferential standard of review" ' to SPB interpretations of governing statutes].)  The judiciary takes ultimate responsibility for the construction of statutes, although according great weight and respect to the administrative construction such as is appropriate under the circumstances. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7, 11-13 (*Yamaha*).)"  (*Corrections, supra,* at p. 1611.)

## II

### *Notice Requirements*

Most of Fisher's opening brief is devoted to arguing, in several different ways, that he must be reinstated to his position as an SPB administrative law judge because of the procedural defect that he did not receive prior notice that outside work with the Simas law firm constituted an incompatible activity.  The arguments have no merit.

### A.

### *Section 19990*

Fisher argues that "[t]he legitimacy of the SPB Decision . . . depends entirely on the validity of the section 19990 charge."  Fisher further argues section 19990 requires actual rather than constructive notice, and that he never received actual notice.

Section 19572, subdivision (r), prohibits state civil service employees from committing a "[v]iolation of the prohibitions set forth in accordance with Section 19990." In turn, section 19990 provides in pertinent part:

"A state officer or employee shall not engage in any employment, activity, or enterprise which is clearly inconsistent, incompatible, in conflict with, or inimical to his or her duties as a state officer or employee.  [¶]  Each appointing power shall determine, subject to approval of the department, those activities which, for employees under its jurisdiction, are inconsistent, incompatible or in conflict with their duties as state officers or employees.  Activities and enterprises deemed to fall in these categories shall include,

15

but not be limited to, all of the following:  [¶]  (a) Using the prestige or influence of the state or the appointing authority for the officer's or employee's private gain or advantage or the private gain of another.  [¶]  (b) Using state time, facilities, equipment, or supplies for private gain or advantage.  [¶]  (c) Using, or having access to, confidential information available by virtue of state employment for private gain or advantage or providing confidential information to persons to whom issuance of this information has not been authorized.  [¶] . . . [¶]  (e) Performance of an act in other than his or her capacity as a state officer or employee knowing that the act may later be subject, directly or indirectly to the control, inspection, review, audit, or enforcement by the officer or employee.  [¶] . . . [¶]  The department shall adopt rules governing the application of this section.  *The rules shall include provision for notice to employees prior to the determination of proscribed activities and for appeal by employees from such a determination and from its application to an employee*.  Until the department adopts rules governing the application of this section, as amended in the 1985-86 Regular Session of the Legislature, existing procedures shall remain in full force and effect."  (Italics added.)

Fisher relies on the italicized language in section 19990 to argue he remained free of any potential discipline until given actual notice of incompatible activities.  We disagree.

The opening sentence of section 19990 provides that "[a] state officer or employee *shall not* engage in any employment, activity, or enterprise which is clearly inconsistent, incompatible, in conflict with, or inimical to his or her duties as a state officer or employee."  (Italics added.)  Thus, section 19990 unconditionally prohibits state officers and employees from engaging in activities incompatible with their duties.  Moreover, subdivisions (a) through (g) of section 19990 specifically articulate activities that are deemed incompatible as a matter of law.  Section 19990 does not require that state employees and officers receive actual, prior notice before being disallowed from

16

engaging in activities that are incompatible with their duties as state employees and officers.

Fisher misplaces his reliance on section 19990's instruction that the department adopt rules to implement the statute. The "department" to which section 19990 refers is CalHR. (§ 19815, subd. (a).) The instruction that the department "adopt rules governing the application of" section 19990 that "include provision for notice to employees prior to the determination of proscribed activities" does not excuse state employees from violating their duties as state employees. The language Fisher relies on refers to the appointing power's authority to identify additional activities it deems incompatible in addition to those set forth in subdivisions (a) through (e) of section 19990.

The last sentence of section 19990 provides that "existing procedures *shall remain in full force and effect*" until CalHR "adopts rules governing the application of this section . . . ." (Italics added.) This means section 19990 was binding even before CalHR's implementation of rules governing the statute's application. (Stats. 1986, ch. 1344, § 1, pp. 4787-4788 [amending section 19990].) It would be nonsensical that a statutory prohibition on wrongful conduct suddenly be excused by the adoption of rules by CalHR that are intended to implement the legislation. (See *Our Children's Earth Foundation v. California Air Resources Bd.* (2015) 234 Cal.App.4th 870, 886 [policies and rules adopted by agency at the direction of statute "must be reasonably necessary to implement the purpose of the statute"].)

We reject as inapposite Fisher's reliance on *Shepherd v. State Personnel Bd.* (1957) 48 Cal.2d 41 (*Shepherd*). As the California Supreme Court subsequently recognized, *Shepherd* involved the interpretation of language in section 19572, subdivision (s), that was later superseded by amendment. (*Nightingale v. State Personnel Board* (1972) 7 Cal.3d 507, 511.) In 1957, section 19572 stated: "Each of the following constitutes cause for discipline of an employee, or person whose name appears on any

17

employment list: [¶] . . . [¶] (s) Any other failure of good behavior or acts either during or outside of duty hours which are incompatible with or inimical to the public service." (*Shepherd*, at p. 45, fn. 1.) The *Shepherd* court held that former section 19572 had been amended in 1949 to "provide[] in substance that a state officer or employee shall not engage in any activity which '*has been determined*' to be inconsistent, incompatible, or in conflict with his [or her] duties and that each appointing power 'shall determine and prescribe,' subject to approval of the board, those activities which will be considered inconsistent, incompatible, or in conflict with the duties of state officers or employees under his [or her] jurisdiction." (*Shepherd*, *supra*, at p. 48, italics and brackets added.) In other words, the *Shepherd* court examined statutory language that required prior determination of incompatible activities before an employee could be sanctioned for engaging in such activities. (*Id.* at pp. 48-49.)

More importantly, the *Shepherd* court noted the pre-1949 version of section 19572 simply stated that " '[a] State officer or employee shall not engage in any other activity, or enterprise inconsistent, incompatible, or in conflict with his duties as a State officer or employee.' " (*Shepherd*, *supra*, 48 Cal.2d at p. 49, fn. 3.) The Supreme Court held the employee was properly disciplined for his pre-1949 misconduct that was "incompatible or inimical to the public service" on grounds the statute had not required prior notice or prior determination of incompatible activities. (*Id.* at p. 50.) Because the current language of section 19990 mirrors the flat prohibition on incompatible activities used by the pre-1949 language of section 19572 construed in *Shepherd*, we adopt the Supreme Court's reasoning to conclude no prior notice is required under section 19990. (*Ibid.*)

Fisher also misplaces his reliance on the memorandum of understanding that applies to his bargaining unit. Section 13.2(B) of the memorandum of understanding states that:

18

"An employee may request that the department grant an exception to the prohibitions on outside employment contained in the applicable Incompatible Activities statement. If the exception is denied, upon request by the employee, it shall be reviewed by a committee composed of two (2) representatives of the department and two (2) representatives of CASE.[6] The committee will issue a recommendation to the department head or designee for decision."

This provision in the memorandum of understanding does not allow a covered employee to engage in incompatible activities until expressly instructed to desist. Instead, the memorandum of understanding provides that the department head or designee will make an informed "decision," rather than inform the employee to cease the incompatible activity or to impose discipline for the wrongful conduct. In short, nothing in the language of section 13.2(B) of the memorandum of understanding purports to allow an employee to engage in incompatible activities until receiving actual notice of the prohibition on the activity.

We are not persuaded by Fisher's reliance on *In re Errol L. Dunnigan* (1993) SPB Dec. No. 93-32. As a preliminary matter, we note that "the SPB precedents are not binding on this court." (*Corrections*, *supra,* 121 Cal.App.4th at p. 1618.) We further note *Dunnigan* involved substantially different circumstances. The SPB in *Dunnigan* considered the matter of discipline imposed on a California Highway Patrol traffic officer who scheduled his court appearances in a manner most likely to pay overtime. (*Dunnigan*, at 4-6.) This scheduling practice was common to 10 traffic officers and did not conflict with any existing policies of the California Highway Patrol. (*Id.* at p. 5-6.) As the SPB recounted, "there was no policy in place either encouraging or discouraging the acquisition of overtime." (*Id.* at p. 6.) Consequently, the SPB declined to impose discipline for violation of a non-existent policy. (*Id.* at pp. 11-12.) Here, however,

---

**6**     California Attorneys, Administrative Law Judges and Hearing Officers in State Employment, Bargaining Unit 2, article 2 (eff. Apr. 1, 2011 through July 1, 2013).

Fisher's conduct violated the statutory prohibition imposed by section 19990 as well as the SPB incompatible activities statements that were in effect.

### B.

### *SPB Incompatible Activities Statements*

Fisher contends the SPB's 2013 incompatible activities statement is invalid as an underground regulation. We disagree.

An "underground regulation" is "[a] regulation found not to have been properly adopted." (*People v. Medina* (2009) 171 Cal.App.4th 805, 813.) " 'An underground regulation is a regulation that a court may determine to be invalid because it was not adopted in substantial compliance with the procedures of the [Administrative Procedures Act].' " (*Id*. at pp. 813-814, quoting *Patterson Flying Service v. Department of Pesticide Regulation* (2008) 161 Cal.App.4th 411, 429.) However, the SPB's 2013 incompatible activities statement is not a regulation subject to Administrative Procedures Act rulemaking requirements.

Section 11342.600 provides, " 'Regulation' means every rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure." Expressly exempted from the administrative regulations rulemaking procedures are rules applying only *within* an agency. To this end, section 11340.9 declares that "[t]his chapter does not apply to any of the following: [¶] . . . [¶] (d) A regulation that relates only to the internal management of the state agency." Because the SPB's 2013 incompatible activities statement applies only to the internal management of SPB employees, it is not an underground regulation.

## C.

### *Substantial Evidence*

Fisher argues that "[t]he SPB Decision is not supported by substantial evidence . . . ." We conclude substantial evidence supports Administrative Law Judge Lew's findings that Fisher actually knew SPB had an incompatible activities statement, took the of counsel position with knowledge that it created ethical problems, and failed to disclose his relationship to the Simas law firm.

The record establishes that the SPB had an incompatible activities statement in place at all times while Fisher was an SPB administrative law judge. These statements clearly precluded SPB administrative law judges from engaging in activities that would interfere with their judicial duties, bring disrepute to the SPB, or use the prestige of their offices for private gain. Fisher acknowledged he had completed a training course during which he was directed to examine the SPB's incompatible activities statement. And he used the SPB intranet where the incompatible activities statement could be accessed.

Fisher did not request permission of his SPB superiors to engage in outside legal work. The testimony of the chief administrative law judge and then-presiding administrative law judge on this point was persuasive. Fisher's assertions to the contrary were expressly found noncredible.

Fisher displayed some awareness the of counsel relationship would be problematic by orally discussing the matter of an "ethical wall" with Simas. However, any agreed-upon procedures were not reduced to writing. And, as Administrative Judge Lew found, Fisher actually consulted on a matter involving a CalTrans employee that could have resulted in a case before the SPB. Moreover, Fisher gave advice in the matter of this potential litigant using his SPB-assigned e-mail address. As the trial court noted, "even if

21

Fisher never presided over a case involving Caltrans, it simply looks bad to have a state ALJ earning money by providing legal advice about suing a state agency."

Fisher further indicated an awareness of the troublesome nature of his relationship with Simas & Associates by indicating that his profile on the law firm's Website should not mention his status as an *SPB* administrative law judge but only classify him as within the "nondescript class" of state administrative law judges. Indeed, Fisher testified that when he and Simas first discussed the of counsel position, Fisher stated he could not be listed as an SPB administrative law judge "because of the obvious conflict that would . . . present." Fisher acknowledged a connection between his position as an SPB administrative law judge and his position with the Simas law firm "could harm SPB." However, Fisher never reduced to writing his purported instruction to the Simas law firm not to use his SPB position on the firm Website. The very ethical problems Fisher purportedly sought to alleviate with an ethical wall and limited Website profile actually manifested. He gave advice to the Simas law firm on a matter that might have come before the SPB and he was listed as an SPB administrative law judge.

In short, Fisher was actually aware his relationship with Simas & Associates posed an ethical problem due to his continued status as an SPB administrative law judge. Even if Fisher did not subjectively appreciate the wrongful nature of his employment with the Simas firm, his conduct violated the provisions of sections 19572, subdivision (r), and 19990 as well as the SPB statements of incompatible activities. "It was established long ago that ignorance of the law does not excuse one from the consequences of the law." (*Arthur Andersen v. Superior Court* (1998) 67 Cal.App.4th 1481, 1506 [collecting authority].)

## III

### *Predismissal Procedure*

Fisher tenders an argument under the heading, "The SPB Decision failed to address the *Skelly* violation." The gravamen of Fisher's argument is unclear. It appears to be based on a contention that Administrative Law Judge Lew erred by omitting a discussion on the merits of Fisher's allegation of a *Skelly* violation. The *Skelly* violation appears to have been "a missing document" referring to title 2 of the California Code of Regulations section 18730. We reject the argument.

Fisher limits his argument to the contention that the error "hampered Fisher's preparation of legal defense to a charge of dishonesty . . . ." However, the SPB decision exonerated Fisher on all four dishonesty charges. And the penalty was not imposed in any part on the rejected dishonesty charges. As a consequence, Fisher suffered no prejudice from any omission from the packet of information disclosed to him in advance of the hearing before Administrative Law Judge Lew. Reversible error requires demonstration of prejudice arising from the reasonable probability the party "would have obtained a better outcome" in the absence of the error. (*People v. Martinez* (2013) 57 Cal.4th 555, 566.) For this issue on which he prevailed before the SPB, Fisher cannot establish prejudice.

## IV

### *Penalty*

Fisher contends his dismissal from his position as an SPB administrative law judge is unjustly harsh. We are not persuaded.

### A.

### *The Deferential Nature of Penalty Review*

As this court has previously explained, "once the SPB renders a decision, its determination regarding whether the facts justify discipline and, if so, what the

appropriate penalty should be, will not be disturbed in a mandamus proceeding unless the SPB patently abused its exercise of discretion by acting arbitrarily, capricious, or beyond the bounds of reason. (*Pollak v. State Personnel Bd*. (2001) 88 Cal.App.4th 1394, 1404, (hereafter *Pollak*); *Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 54.) [¶] In reviewing a decision of the SPB, a court must view the record in the light most favorable to the SPB's decision and uphold its factual findings if supported by substantial evidence. (*Pollak, supra*, 88 Cal.App.4th at p. 1404.) ' " 'Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed.' [Citations.]" [Citation.]' (*Ibid*.) Thus, if reasonable minds may differ as to the propriety of the penalty, there is no abuse of discretion." (*Siskiyou County v. State Personnel Bd*. (2010) 188 Cal.App.4th 1606, 1615.) With this standard of review in mind, we turn to the SPB's selection of penalty in this case.

## B.

### *The SPB's Rationale for Fisher's Dismissal*

In determining the appropriate penalty, Administrative Law Judge Lew found Fisher "has an impressive history of public service. His conduct, placed in the best light, may have been a misguided attempt to help a longtime colleague and friend. Yet one with his extensive experience in public service and as an administrative law judge should have known better. He displayed an appalling lack of judgment when he became of counsel with Simas & Associates. He continued to demonstrate poor judgment when he failed to disclose his of counsel relationship to SPB. He had multiple opportunities that called for him to make disclosures. He sat silently through an SPB [administrative law judge] meeting when *Liebich* was discussed. He did not excuse himself from that discussion. He made no disclosure when [administrative law judge] Allen-Brecher selected him among a smaller group of [administrative law judges] to review a decision draft in this case. He failed to disclose his of counsel position on Form 700. He did not

24

seek SPB's permission to engage in outside work as of counsel, he never disclosed his of counsel position to SPB, and he never undertook to construct an 'ethical wall' within SPB. [Fisher's] lack of judgment in all the above respects raises further questions about his ability to exercise good judgment in making decisions as an [administrative law judge.]"

Notably, Administrative Law Judge Lew found Fisher "displayed little remorse for his actions. He accepted little responsibility for the events leading to his dismissal. Under these circumstances, it cannot be said that the likelihood of recurrence of this, or a similar episode is low." "Had [Fisher's] outside employment with Simas & Associates become public, the harm to SPB would be serious. His actions undermined the very integrity of SPB. Parties appearing before SPB could fairly question whether SPB was truly an unbiased and impartial tribunal. The idea that one of SPB's judges was also of counsel to a firm that regularly appeared before SPB, and that was then involved in a high-profile case, cannot be tolerated under any circumstances. And the idea that an [administrative law judge] was taking advantage of his position for his own or law firm's pecuniary gain erodes the public's confidence in public service."

## C.

### *Appropriate Penalty*

The evidence showed Fisher's conduct was egregious, and it was repeatedly egregious. Accordingly, we conclude the SPB did not abuse its discretion in determining Fisher should be dismissed from his position as an administrative law judge.

From the initial decision to accept an of counsel relationship with the Simas law firm, a number of equally disturbing lapses of judgment followed. Fisher gave his case analysis and recommendations for a party that could potentially come before his tribunal, and he did so by using his SPB e-mail account. Fisher also remained for a discussion of the *Liebich* case among the administrative law judges even though he was aware Simas &

25

Associates represented the disciplined employee. Equally shocking was Fisher's choice to open and read the draft decision in the *Liebich* case when he received it from another SPB administrative law judge. At no point did Fisher disclose his law firm relationship to his superiors or colleagues at the SPB.

We defer to the factual finding by Administrative Law Judge Lew that "the likelihood of recurrence of this, or a similar episode" was not low based on additional factual findings that Fisher "displayed little remorse for his actions" and "accepted little responsibility" for his conduct. Substantial evidence supported this finding. Fisher testified he understood he had a duty to comply with section 19990 and to avoid the appearance of impropriety. Despite being admonished to do so, Fisher did not follow his training's directive to read the SPB's incompatible activities statement. And when he served as of counsel, Fisher acknowledged that "it was foreseeable that a matter involving Simas and Associates could come before the [SPB]." Fisher's testimony about having received permission to engage in outside legal work was specifically disbelieved by Administrative Law Judge Lew. Fisher recognized that having the Simas Website list his position as an SPB administrative law judge "was an obvious conflict." Fisher provided legal advice for a CalTrans employee using his SPB e-mail address and computer.

But it "didn't cross [Fisher's] mind" to inform anyone at the SPB about his relationship with the Simas law firm even when Fisher learned the firm was representing Liebich before the SPB. Whether through lapse of judgment or reckless indifference to ethical issues, the evidence supports the SPB's conclusion it was not unlikely Fisher would engage in another similar episode of ethical lapse antithetical to his role as an administrative law judge. This conclusion supports the SPB's decision to dismiss Fisher from his position as an administrative law judge.

26

We reject Fisher's contention that dismissal was unduly harsh because the SPB did not prove his conduct "resulted in harm to the public service." The SPB did not have the burden of proving harm to the agency before determining Fisher's misconduct warranted dismissal. As this court has previously held, there is no requirement that the "employee's misconduct must be known to the public in order to cause 'discredit to his [or her] agency or his [or her] employment' . . . ." (*Constancio v. State Personnel Bd.* (1986) 179 Cal.App.3d 980, 990.)

Fisher emphasizes his prior upstanding reputation as well as character references he has received from others. This is not in dispute. Administrative Law Judge Lew expressly acknowledged Fisher's "impressive history of public service." Fisher was dismissed based on specific instances of egregious violations of the duties of his office as an SPB administrative law judge, not for his reputation in the community.

Finally, Fisher notes he was "largely unconcerned with financial gain and indifferent to prestige . . . ." Regardless of whether this assertion is true, it is irrelevant to the appropriateness of the penalty. The SPB's determination of Fisher's repeated wrongful conduct combined with the not insignificant probability he would repeat similar unethical behavior sufficed to justify the penalty of dismissal.[7]

## DISPOSITION

The judgment is affirmed. The State Personnel Board shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).) Attorney Richard Paul Fisher and the clerk of this court are *each* ordered to forward a copy of this opinion to the State Bar

---

[7] Our conclusion that Fisher's violations of the prohibitions stated in section 19990 and the SPB incompatible activities statements warranted his dismissal obviates the need to consider whether his conduct also violated title 2, section 56.5, of the California Code of Regulations, and whether Fisher's statements on his 2013 Form 700 constituted additional evidence of wrongful conduct supporting the penalty imposed by the SPB.

27

of California upon issuance of the remittitur.  (Bus. & Prof. Code, §§ 6086.7, subd. (c), 6068, subd. (*o*)(6); *DeRose v. Heurlin* (2002) 100 Cal.App.4th 158, 182; Cal. Code Jud. Ethics, canon 3D(2).)


|  |
| --- |
| /s/ |

HOCH, J.

We concur:


|  |
| --- |
| /s/ |

MURRAY, Acting P. J.


|  |
| --- |
| /s/ |

DUARTE, J.

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| RICHARD PAUL FISHER, | C081957 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 34201480001980CUWMGDS) |
| STATE PERSONNEL BOARD, | |
| Defendant and Respondent. | ORDER MODIFYING OPINION, CERTIFYING OPINION FOR PUBLICATION, AND DENYING REHEARING |
| | [NO CHANGE IN JUDGMENT] |

APPEAL from a judgment of the Superior Court of Sacramento County, Christopher E. Krueger, Judge. Affirmed.

Richard Paul Fisher, in pro per, for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Chris A. Knudsen, Senior Assistant Attorney General and Peter D. Halloran, Supervising Deputy Attorney General for Defendant and Respondent.


THE COURT:

The opinion filed June 11, 2017, in the above cause is modified as follows:

On page 17, add the following after the first partial paragraph:

Section 19990's prohibition on inconsistent and incompatible duties compels rejection of Fisher's reliance on *Earl v. State Personnel Board* (2014) 231 Cal.App.4th 459.  In *Earl*, this court construed section 3304, subdivision (d)(1), of the Public Safety Officers Procedural Bill of Rights Act to require actual – rather than constructive – notice when a public agency is expressly required to "notify the public safety officer" of a disciplinary action within one year of discovery of the misconduct.  (*Earl*, *supra*, at p. 463.)  Nothing in *Earl* supports the proposition advanced by Fisher that a public employee may violate section 19990's prohibition on inconsistent and incompatible activities until he or she receives actual notice of the violation.

On page 27, delete the word "unethical" from the last sentence of the third full paragraph.

The opinion in the above entitled matter was not certified for publication in the Official Reports.  For good cause it now appears the opinion should be published and accordingly, it is ordered that the opinion be published pursuant to California Rules of Court, rule 8.1105(c)(4).

There is no change in the judgment.

Appellant's petition for rehearing is denied.


        /s/
MURRAY, Acting P. J.


        /s/
DUARTE, J.


        /s/

30

HOCH, J.