Filed 2/22/21  Moltzen v. State Personnel Board CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ERIC MOLTZEN, | C090322 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2018-80003017-CU-WM-GDS) |
| v. | |
| STATE PERSONNEL BOARD et al., | |
| Defendants and Respondents; | |
| DEPARTMENT OF CORRECTIONS AND REHABILITATION et al., | |
| Real Parties in Interest and Respondents. | |

The Department of Corrections and Rehabilitation (Department) imposed a five percent pay reduction for six months following an incident in which plaintiff Eric Moltzen, a correctional officer at Folsom State Prison, pepper-sprayed an inmate.  The Department concluded plaintiff's use of force constituted neglect of duty, willful

1

disobedience, and other failure of good behavior. The State Personnel Board (Board) upheld the decision. Plaintiff filed a petition for writ of administrative mandamus in the trial court, which the court denied. (Code Civ. Proc., § 1094.5.)

On appeal, plaintiff contends the Board's decision is not based on substantial evidence and violated his right to due process because he lacked notice of a clear policy prohibiting his use of force. We conclude the evidence is sufficient to sustain the Board's decision, and therefore we will affirm the trial court's denial of the petition for writ of mandamus.

## FACTS AND PROCEEDINGS

*Factual Background*

Plaintiff began working as a correctional officer at Folsom State Prison in January 2003. On February 12, 2017, plaintiff worked his regular shift, which included distributing meal trays to inmates and picking up meal trays and trash. Plaintiff first unlocked the inmates' food ports, and he and another correctional officer passed out meal trays. Plaintiff gave inmate Aaron Coleman his meal tray. Another inmate asked plaintiff a question, which caused plaintiff to forget to lock Coleman's food port.

After distributing the meal trays, plaintiff proceeded to collect the meal trays and trash. As he approached Coleman's cell, he saw Coleman's tray, trash, and an unopened milk carton lying on the floor in front of his cell door. Plaintiff placed the tray and the trash on the ledge of Coleman's food port and told him to dispose of the trash properly. The food port unexpectedly slammed shut, pushing the trash onto the floor in Coleman's cell.

Coleman grabbed the milk from the floor of his cell, opened it, and started throwing milk through the cell door onto the tier. Plaintiff ordered Coleman to stop. Coleman ignored the order and continued throwing milk, several drops of which landed on plaintiff's jumpsuit.

2

Plaintiff, who was standing approximately one foot from Coleman's door, drew pepper spray from its holder, held it at chest level, and sprayed one burst at Coleman through the cell door. Coleman stopped throwing milk, turned around, and laid on his bunk.

Plaintiff reported the incident via radio and waited for responding staff to arrive; he had no further contact with Coleman that day. Within an hour of the incident plaintiff completed an incident report, in which he described the incident as a "Battery on a Peace Officer (Gassing) Resulting in the Use of Force." Plaintiff listed the substance with which he had been battered as "milk."

Plaintiff was served with a notice of adverse action pursuant to Government Code section 19574, informing him of his pay reduction of five percent for six months. The notice stated three grounds for the adverse action: inexcusable neglect of duty (*id.*, § 19572, subd. (d)), willful disobedience (*id.*, § 19572, subd. (o)), and other failure of good behavior during or outside duty hours which is of such a nature as to cause discredit to the appointing authority or the person's employment (*id.*, § 19572, subd. (t)).

*Board Hearing*

Plaintiff appealed the adverse action to the Board, which conducted an evidentiary hearing before an administrative law judge (ALJ). The ALJ's proposed decision was later adopted by the Board. The parties stipulated spraying a liquid onto a person is a battery.

Sergeant Corey Ringer, plaintiff's training officer, testified an ongoing battery is an imminent threat, plaintiff was trained to "deal" with any imminent threat he encountered by whatever force necessary to subdue the threat, and he was trained to not retreat from an ongoing imminent threat. Plaintiff was not trained or expected to identify a substance used in an attack. However, Ringer also acknowledged that not every battery will authorize immediate force. Rather, every situation is different, and immediate force is authorized only where there is an "ongoing threat."

3

*Board Decision*

The ALJ's decision set forth the policies and regulations relevant to the decision, with which plaintiff acknowledged he was familiar, including the following:

"It is the policy of [the Department] to accomplish custodial and correctional functions with minimal reliance on the use of force. Employees may use reasonable force as required in the performance of their duties, but shall not use unnecessary or unreasonable force." (Dept. of Corrections and Rehabilitation, Operations Manual (2016 rev.) § 51020.1.)[1] "It is the expectation that staff evaluate the totality of circumstances involved in any given situation, to include consideration of an inmate's demeanor, bizarre behavior, mental health status if known, medical concerns, as well as ability to understand and/or comply with orders, in an effort to determine the best course of action and tactics to resolve the situation. Whenever possible, verbal persuasion should be attempted in an effort to mitigate the need for force." (*Id.*, § 51020.5.)

"Reasonable force is the force that an objective, trained, and competent correctional employee faced with similar facts and circumstances, would consider necessary and reasonable to subdue an attacker, overcome resistance, effect custody, or gain compliance with a lawful order." (Operations Manual, § 51020.4.) "Immediate use of force is the force used to respond without delay to a situation or circumstance that constitutes an imminent threat to institution/facility security or the safety of persons. Employees may use immediate force without prior authorization from a higher official. [¶] Immediate force may be necessary to subdue an attacker, overcome resistance or effect custody. [¶] If it is necessary to use force solely to gain compliance with a lawful order, controlled force shall be used." (*Ibid.*)

---

[1] Further references to operations manual are to the Department's Operations Manual (2016 rev.).

4

"An imminent threat is any situation or circumstance that jeopardizes the safety of persons or compromises the security of the institution, requiring immediate action to stop the threat. Some examples include, but are not limited to: an attempt to escape, on-going physical harm or active physical resistance." (Operations Manual, § 51020.4.) "A controlled use of force is the force used in an institution/facility setting, when an inmate's presence or conduct poses a threat to safety or security and the inmate is located in an area that can be controlled or isolated. These situations do not normally involve the imminent threat to loss of life or imminent threat to institutional security. All controlled use of force situations requires the authorization and the presence of a [manager]." (*Ibid.*)

The ALJ observed that an employee should be held accountable for violating a Department policy where (1) there is a clear policy; (2) the employee had notice of the policy; and (3) the Department intended to enforce that policy. The ALJ found plaintiff was aware of the policy regarding use of force and imminent threat and that he failed to establish how the inmate splashing milk on him through a locked cell constituted an imminent threat to his safety or the security of the institution.[2] The ALJ concluded plaintiff's behavior constituted inexcusable neglect of duty (Gov. Code, § 19572, subd. (d)), and she sustained the charge. The ALJ also found plaintiff's behavior rose to the level of "willful disobedience" (*id.*, § 19572, subd. (o)), and "[o]ther failure of good behavior either during or outside of duty hours, which is of such nature that it causes discredit to the appointing authority or the person's employment" (*id.*, § 19572, subd. (t)).

_____

[2] Although plaintiff testified at the Board hearing that he did not know the substance was uncontaminated milk, the ALJ found that "his testimony conflicted with his [report] about his knowledge of the substance" thrown at him. After a thorough recitation of various inconsistencies between plaintiff's reporting and his testimony, the ALJ declined to credit his testimony on this and other issues. Plaintiff does not dispute the ALJ's factual findings on appeal.

5

Following the Board's adoption of the ALJ's decision, the Board denied plaintiff's petition for rehearing. The trial court subsequently denied plaintiff's petition for writ of mandate. Plaintiff timely appealed.

## DISCUSSION

Plaintiff's sole contention on appeal is that the Board's decision was not based on a clear policy of which he had notice; he characterizes the Board's decision as being based on "the aspirational goal of 'minimal reliance on force.' " Accordingly, plaintiff contends the policies of which he had notice authorized him to use immediate force to stop an ongoing battery, which he asserts is necessarily an imminent threat. Plaintiff does not dispute the ALJ's factual findings, as adopted by the Board, regarding the incident.

The Department responds that plaintiff confirmed in his report that the substance splashed at him was milk (rather than some unknown and possibly threatening substance) and that he failed to raise any safety concerns regarding the milk at the time of the incident. Being hit with a few drops of milk, while technically a battery, does not rise to the level of an immediate threat because Coleman was locked in a cell. The Department contends if plaintiff had followed stated policy, he would have considered the totality of the circumstances and simply moved away from the front of the locked cell to deescalate the situation.

A. *Standard of Review*

"[The Board] is a 'statewide administrative agency which is created by, and derives its adjudicatory power from, the state Constitution. [Citation.] Under that constitutional grant, [the Board] is empowered to "review disciplinary actions." In undertaking that review, [the Board] acts in an adjudicatory capacity. "The [Board] is an agency with adjudicatory powers created by the California Constitution." [Citation.] As such [the Board] acts much as a trial court would in an ordinary judicial proceeding. Thus, [the Board] makes factual findings and exercises discretion on matters within its jurisdiction. On review the decisions of [the Board] are entitled to judicial deference.

6

The record must be viewed in a light most favorable to the decision of [the Board] and its factual findings must be upheld if they are supported by substantial evidence.  [Citation.]' [Citations.]

"[¶] . . . [¶]

"On appeal, '[w]e apply the substantial evidence test in reviewing a decision of [the Board].  [Citation.]  We do not reweigh the evidence; we indulge all presumptions and resolve all conflicts in favor of the [Board's] decision.  Its findings come before us "with a strong presumption as to their correctness and regularity."  [Citation.]  We do not substitute our own judgment if [the Board's] decision " ' "is one which could have been made by reasonable people. . . ."  [Citation.]' " '  [Citations.]" (*California Youth Authority v. State Personnel Bd.* (2002) 104 Cal.App.4th 575, 584.)

Under Code of Civil Procedure section 1094.5, we inquire whether the Board proceeded without, or in excess of, jurisdiction; whether there was a fair trial, and whether there was a prejudicial abuse of discretion.  Abuse of discretion is established if the Board did not proceed in the manner required by law, the order or decision is not supported by the findings, or the evidence does not support the findings.  (Code Civ. Proc. § 1094.5, subd. (b); *Fisher v. State Personnel Bd.* (2018) 25 Cal.App.5th 1, 13.)

B.  *Analysis*

At the outset, we disagree with plaintiff's characterization of the Board's decision as based entirely on the "aspirational goal" of minimizing the use of force.  Certainly, the ALJ recognized that plaintiff was on notice and aware of the policy regarding the minimal reliance on the use of force and that he was expected to evaluate the totality of the circumstances to determine the best course of action and tactics to resolve the situation.  But the ALJ's analysis proceeded to determine whether plaintiff's use of force was *reasonable* in that it was deployed in response to an "imminent threat" as defined by the Department's policy.  The ALJ recognized that immediate use of force--including the

7

use of pepper spray--is force used to respond to an imminent threat to the safety of persons or the security of the institution. (Operations Manual, § 51020.4.)

We recognize that plaintiff was not trained or expected to identify the source of a liquid before responding to a perceived threat, and we are cognizant of the fact that liquids may pose a danger to correctional staff. However, the Board made the factual finding--not contested by plaintiff--that plaintiff *did* identify the liquid as milk and did not raise any concerns of contamination. Accordingly, the Board concluded plaintiff failed to establish that his use of immediate force was a reasonable response to an imminent threat.

We agree that under no reasonable interpretation of the term could a few drops of uncontaminated milk thrown from inside a locked cell constitute an "imminent threat" to plaintiff's safety or the security of the institution. Indeed, plaintiff's training officer agreed that whether a battery justifies the use of immediate force "depends on the situation" because "[t]here has to be an ongoing threat." Substantial evidence supports the ALJ's conclusion that a few drops of milk are not an "ongoing threat" such that the throwing thereof was sufficient to justify plaintiff's use of immediate force.[3]

---

[3] For similar reasons, we reject plaintiff's claim that the Department's imposition of discipline violated his due process rights. As we have discussed, the Department's policies prohibited the immediate use of force in the absence of an imminent threat to personal safety or institutional security.

## DISPOSITION

The judgment denying the petition for writ of administrative mandamus is affirmed. The Department is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

/s/
Duarte, J.

We concur:

/s/
Mauro, Acting P. J.

/s/
Murray, J.

9